THE PEOPLE EX REL. DEAN V. COMMISSIONERS OF GRAND
COUNTY.

1. The unsworn declarations of parties touching their qualifications as
   voters, after the election, and who were not present at the trial to
   contradict or explain such declarations, *held* to have been properly
   excluded as mere hearsay.
2. It is within the discretion of the court to refuse an attachment for a
   witness, who, after being subpœnaed, refuses to attend and testify;
   and the refusal of the court to issue an attachment will not war-
   rant this court in reversing the finding, in the absence from the
   record of what it was expected to prove by such witness.
3. The act of 1876, requiring a two-thirds vote in favor of the removal
   of county seats, has no application to the county of Grand.

THE facts are stated in the opinion.

Messrs. FRANCE and ROGERS, for the people.

Mr. R. S. MORRISON, for the respondents.

STONE, J.   This is an original proceeding brought to
this court by *mandamus*, for the purpose of testing the
validity of the acts of the board of county commission-
ers of Grand county in declaring the county seat of that
county removed from Hot Sulphur Springs to Grand
Lake, as the result of an election held for that purpose
in the fall of 1880, and in removing the public records,
offices and business to Grand Lake, as the lawful county
seat.

In the opinion rendered by this court, when the case
was formerly before us (6 Col. Rep. 202), we directed the
issues of facts to be tried in the court below, and that
the verdict of the jury, or the finding of the court therein,
be returned to this court, showing, first, what number of
votes was cast by the qualified voters of Grand county at
the general election held in that county on the 2d day of
November, 1880, on the question of the removal of the
county seat of said county, and second, of the number
of votes so cast, what number of legal votes was for Hot

Sulphur Springs, and what number for Grand Lake, for county seat. In accordance with said order, the record before us presents the proceedings and evidence in the trial of said issue, and the court returns its finding as follows, to wit:

"And now on this 18th day of August, A. D. 1882, this cause heretofore, at the present term of the court, having been submitted to the court upon the evidence and arguments of counsel in said case, and the court being fully advised in the premises, and a jury having been waived by the parties hereto, the court now finds that the number of votes casts by the qualified voters of Grand county at the general election held in said county on the 2d day of November, A. D. 1880, on the question of the removal of the county seat of Grand county, was one hundred and sixty-four, and of the number of votes so cast, the number of legal votes cast for Hot Sulphur Springs for county seat was seventy-one (71), and the number of legal votes cast for Grand Lake for county seat was ninety-three (93).        By the court,

[SEAL.]        "CHESTER C. CARPENTER, Judge."

Counsel for the relator, in his argument filed herein, claims that this finding is erroneous, for the reasons that, first, admitting that the election returns show *prima facie* that Grand Lake received one hundred and one votes, Grand Lake, west side, thirteen votes, and Hot Sulphur Springs eighty-three votes, yet rejecting the thirteen votes cast for Grand Lake, west side, as having been cast for a separate point of location, and then also rejecting the twenty votes cast at Teller precinct, and twenty-seven votes cast at Lulu precinct, amounting to forty-seven votes cast for Grand Lake, as illegal, on the ground of non-compliance with the registry law, and it would leave but fifty-four votes for Grand Lake as against eighty-three for Hot Sulphur Springs; second, that the testimony shows that several votes cast at Grand Lake precinct for that place were illegal, and that more than

twenty others might have been shown to be illegal had not the court refused as evidence certain admissions made to the relator, Dean, after the election, touching the qualifications of voters who are claimed to have made such admissions; and third, that the court erroneously refused to order process to compel the attendance of certain witnesses on behalf of the relator at the trial.

In respect to the registration in the two precincts named, we find from the testimony of the judges of election that there was no registration of voters in Teller precinct, the reason being that the county clerk, whose duty it was to furnish registration blanks for the purpose, failed to furnish any to this precinct, and the board of election judges waited for them up to the day of election without receiving them or making any otherwise.

As to Lulu precinct, the record shows that a registration was made, which seems to be in substantial compliance with the statute, and a certified copy of the registration list was put in evidence without objection, and the returns from that precinct were therefore entitled to be counted.

There was no error in the refusal of the testimony of the relator as to the alleged admissions of certain voters made after the election touching their qualifications. Such testimony was but the unsworn declarations of parties who were not present to contradict or explain such declarations, and sound rules of evidence, as well as reasons founded upon public policy, favor the exclusion of such evidence as hearsay and a means of accomplishing fraud rather than justice. McCrary on Elections, §§ 270, 271, and cases cited.

As to the complaint that process was refused to compel the attendance of witnesses, it appears that certain witnesses who had been subpoenaed, and who had come to the place of trial in obedience thereto, had afterwards refused to appear in court and testify unless their fees were first paid, and that upon affidavit of these facts and

motion for attachment, the court declined to award compulsory process to compel such witnesses to appear in court and testify in the case.    While the court, in its discretion, was undoubtedly authorized to compel such witnesses to appear in court and testify, yet for this court to reverse the finding of the court below, and send the case back upon that ground, is a different matter, and one we would not be warranted in doing, since the affidavit of the relator for the attachment prayed fails to set forth what is expected to be proved by such witnesses, or to even aver that the testimony of any one of them was necessary, pertinent, or in any way material in the case.

Coming to the count of the votes cast upon the question in controversy, it appears that counsel for respondents, acting under what was understood to be the rule laid down in McCrary on Elections, §§ 62–174, that where the presumption that votes cast were legal is overcome by the fact that there was no registry, the burden of proof is upon the party claiming the benefit of the vote to prove that it was legal, and entitled to be registered and cast, made proof that nine votes cast at Teller precinct, where there was no registry, were legal, and were cast for Grand Lake for county seat.    It is then claimed, on behalf of respondent, that the legal number of votes to be counted for Grand Lake stands thus:    Gaskill precinct, eight votes; Lulu precinct, twenty-seven votes; Grand Lake precinct, fifty-four votes; Hot Sulphur Springs precinct, four votes; Teller precinct, nine votes; making a total of one hundred and two votes for Grand Lake. The total vote at Grand Lake precinct was sixty, fifty-four of which were cast for that point for the county seat, including the thirteen which were cast for the location at Grand Lake, *west side.*    We do not think that these votes should be rejected for that reason, as claimed on behalf of the relator.    The question voted upon was the removal of the county seat from Hot Sulphur Springs

to Grand Lake, and the designation by the local voters at Grand Lake of a particular point at the lake as the preferred site ought not to be taken into account.   Each individual voter might possibly have been interested in preferring a different spot as the exact site for the county buildings on the shore of the lake.   It was a matter for the board of county commissioners to determine the exact site at the lake, if a majority of the legal voters of the county should vote in favor of the removal from the springs to the lake.

At Hot Sulphur Springs precinct fifty-nine votes were cast upon the question of removal, five of which were in favor of the removal to Grand Lake, and of these five votes four were found to have been legal, leaving fifty-four in favor of the springs, which, added to twenty-five cast at Troublesome precinct, make seventy-nine in all cast against the removal in the whole county.   Taking the one hundred and two votes, as before estimated, as the total for Grand Lake, and seventy-nine for the springs, it gives Grand Lake a majority of twenty-three votes. If we reject the nine votes counted from Teller precinct in the above estimate — that is to say, if the entire vote at Teller precinct is thrown out — leaving a total of ninety-three for Grand Lake, it still gives a majority of fourteen votes for Grand Lake.

It is claimed on behalf of the relator that the testimony shows that eight or ten of the votes cast at Grand Lake precinct in favor of that point were illegal, and that had the court permitted the introduction of the evidence of Dean as to the declarations of voters, before referred to, it would have been shown that as many as twenty-nine altogether of the Grand Lake votes were not entitled to be counted.   On the other hand, it is claimed by counsel for respondents that the evidence fairly shows that twenty-three certainly, and possibly twenty-nine votes cast at Hot Sulphur Springs for that point were proved to be illegal, and the names of the per-

sons who cast said votes are set out in the brief, together with the names of the witnesses by whose testimony each of such votes is claimed to have been proved illegal. It is difficult to determine, from the mass of testimony brought up by the record, and the uncertain and conflicting character of much of it, exactly how many votes on either side can be said to have been proved illegal or not entitled to be counted; but viewed in every possible way fairly, we think the number on both sides are so nearly equal that the result of the *prima facie* count is not affected. The exact data, or manner of estimating the number of legal votes by which the court below reached the finding returned here, is not stated in the return of said finding; but however the result may be, estimated fairly, we are satisfied that this finding is as nearly correct as the evidence presented by the certified copies of the registry lists, poll books and tally sheets of the election, together with the testimony of the witnesses heard upon the trial contained in the record and bill of exceptions, warrants, and should not be disturbed.

The act of 1876, requiring a two-thirds vote in favor of the removal of county seats, in order to effect such removal, did not affect the case before us, inasmuch as the county of Grand is expressly excepted from the provisions of said act. The finding of the court below is therefore approved, and the judgment of this court is, that the peremptory writ of *mandamus* prayed in this action be denied.

*Writ denied.*