## RUCKS *v.* RENFROW.

Decided April 11, 1891.

1. *County seat election—Parties—Appeal.*
   In a county seat contest the voters have a right to become parties and appeal from the judgment of the county court in favor of one of two competing places.

2. *Election—Evidence—Declaration of voters.*
   The declarations of voters, made after or before an election, are incompetent to show their want of qualification to vote.

3. *When illegal votes do not affect result.*
   The reception of illegal votes will not change the result of the election, unless it is shown for what place they voted.

APPEAL from *Cleveland* Circuit Court.

CARROLL D. WOOD, Judge.

*U. M. & G. B. Rose* and *D. H. Rousseau* for appellants.

1. The declarations of voters made after and before the election as to their qualifications were competent evidence. Story, Eq. Pl, sec. 97; Pom. Eq. Jur., sec. 260; Gr. Ev., sec. 180; 27 N. Y., 59; 23 Wis., 319; 9 Ind., 477.

2.  The offer to build a school, if proved, would be unob-jectionable.   49 Ark., 227.

3.  The court did not err in allowing testimony as to illegal votes not specified in the notice.   Payne on Elections, sec. 827; McCrary on Elections, sec. 394; Mansf. Dig., secs. 2720, 2722.

4.  The identity of name raises a presumption of identity. When it is shown that a man has voted, and the man of that name in that township is disqualified, then the burden is on the other side to repel the presumption of identity.   1 Bar. & Ald., 182; 9 M. & W., 798; *ib.*, 47; 46 Mich., 320; 32 *id.*, 48; 46 Cal., 49; 8 Ala., 746; 33 Ill., 339; 61 Mo., 276; 18 *id.*, 274; 17 Mo., 435; 29 Vt., 179; 5 Watts, 14; 57 Penn. St., 397; 3 A. K. Marsh., 202.

*Met L. Jones* for appellees.

1.  The constitution and laws of this State make no pro-vision for the contest of a county seat election, and appel-lants had no *authority* to bring this suit.   Mansf. Dig., secs. 2720, 2722.

2.  Proof of the declarations of voters as to how they voted is hearsay and incompetent.   41 Ark., 112; 9 Kans., 581; 76 Ill., 46; 81 Ill., 549; 1 Gr. Ev., 124, s; 79 Ind., 282; McCrary on El., secs. 272–3; 12 S. W. Rep., 960, 970.

3.  The offer to build a colored school was in the nature of a bribe.   It rendered the election unfair and unequal. 41 Ark., 63.

HUGHES, J.   This is an appeal from a judgment of the circuit court of Cleveland county that, at an election held on the 17th day of August, 1889, to determine whether the county seat of that county should be located at the town of Rison or the town of Kingsland in said county, Rison had received a majority of the legal votes cast at said election, and that the county seat be removed to said town of Rison from the former county seat location at Toledo, and that Rison should thereafter be the county seat of said county. The case was brought to the circuit court on appeal from

the judgment of the county court, in which court, upon the canvass of votes cast at the election by the clerk of the county courts and the filing of his certificate in said court showing that Rison had received 1009 votes and Kingsland 1002 votes, the appellants and others gave notice that they would contest the election, and afterwards filed a written notice of contest setting out the ground upon which they relied, upon which the county court made orders for the taking of depositions, and set the cause for hearing. This was before the court had proceeded to judgment, and thus appellants became parties to the record, and made the appellees parties, the former representing Kingsland and the latter Rison. The judgment of the county court was for Kingsland, from which appellees have appealed to the circuit court, where a trial *de novo* was had, resulting in a judgment for Rison from which this appeal was taken.

It will be observed that there was no independent suit to contest the election, after the judgment of the county court was rendered, but that appellants made themselves parties in the interest of Kingsland and made the appellees parties in the interest of Rison, pending the determination of the election by the county court, and before any judgment had been rendered. They had a right to become parties, and appeal from the judgment of the county court, though no provision has been made by statute for an appeal in such a case. *McCullough* v. *Blackwell,* 51 Ark., 159, and authorities cited.

1. Parties to contest of county seat election.

It is contended and shown by evidence that many illegal votes were cast at the election, some by minors, some by persons convicted of infamous crimes, and some by non-residents of the county, and some by persons who had not resided long enough in the county and townships in which they voted, to become legal voters. The circuit court refused the following declaration of law asked for by appellants, and gave the converse asked for by the appellees: "The declarations of voters made after or before the election showing their want of qualifications to vote, so far as

2. Declaration of voters as evidence.

age and residence are concerned, are competent and legal testimony to show that such voters did not possess such qualifications." Exceptions were saved, and it is insisted here that this is the law.

The adjudicated cases on this question are not numerous, and are divided. The principal cases that hold such declarations admissible are, *People* v. *Pease,* 27 N. Y., 59; *State* v. *Olin,* 23 Wis., 319; *People* v. *Cicott,* 16 Mich., 283. Among those which hold such evidence inadmissible, are *Gilleland* v. *Schuyler,* 9 Kansas, 582, by Judge Brewer; *Davis* v. *State,* 12 S. W., 960 (Tex.); *Beardstown* v. *Virginia,* 81 Ill., 542, where it is held that: "The declarations of a person made sometime after having voted at an election, admitting or stating facts showing he was not a legal voter, are inadmissible to show his disqualification to vote." The declarations of a voter as to his qualifications may be so contemporaneous with his voting as to be part of the *res gestæ,* and as such competent evidence. *Patton* v. *Coates,* 41 Ark., 117. Judge McCrary, in his work on Elections, sec. 448, says: "The English authorities, though not entirely uniform, are generally in favor of admitting such declarations, and perhaps the weight of authority in this country is the same way, though it cannot be denied that the tendency in the more recent, and we think also the better considered cases, is to exclude this evidence as hearsay." The case of *People* v. *Pease,* 29 N. Y., *supra,* was decided by five judges against three dissenting. The case of *People* v. *Cicott,* in 16 Mich., *supra,* was decided by an equal division of the judges. Judge Cooley says: " If votes were taken *viva voce,* so that it could always be determined with absolute certainty how every person had voted, the objection to this species of scrutiny after an election had been held would not be very formidable. But when secret balloting is the policy of the law, and no one is at liberty to inquire how any elector has voted, except as he may voluntarily have waived his privilege, and when consequently the avenues to correct information concerning the votes cast are carefully

guarded against judicial exploration, it seems exceedingly dangerous to permit any question to be raised upon this subject." Cooley's Constitutional Limitations (6th ed.), p. 789.

Such declarations of a voter are not admissible on the ground that they are in derogation of·an existing right of the voter, and against his interest. They are hearsay, and their admission would violate a sound rule of law and also a sound public policy. There was no error in the circuit court's declaration of the law in this behalf.

We have reached a conclusion in the case which makes it unnecessary to discuss or to determine the other questions of law raised upon the trial and presented here by the bill of exceptions. Of the persons under age who are said to have voted for Rison, we find that there are nine as to whom the evidence does not show for what place they voted. It is charged that five convicts whose names are given voted for Rison, and that six persons whose names are given voted for Rison out of their townships. Again, it is contended that two persons who had not been in the State, and ten who had not been in the township in which they voted, long enough to become qualified electors, voted for Rison, but the evidence fails to show how any of these persons voted. It is insisted that a number of persons, who had not been residents of the county long enough to become qualified voters, voted for Rison, and yet no evidence appears showing for what place nine of these voted. The disqualification as voters of nine of the minors included in the above was shown only by their admissions made after the election. Unqualified persons voting at the election could not change the result unless it were shown for what place they voted. *People* v. *Cicott*, 16 Mich., 283.

Of the minors who are said to have voted for Kingsland, we find no evidence showing for what place four of them voted. Of those who are said to have voted in the wrong township for Kingsland, there is one as to whom there is no evidence how he voted. All of the above have been ex-

3  Effect of illegal votes.

cluded in the estimate we make of the vote, under the rule laid down above. We have estimated that the following illegal votes were cast for Rison at the election: Two by persons under 21 years of age, nine by persons voting in the wrong townships, three by persons not long enough in the State, three by persons who were non-residents of the county—in all, seventeen. And that the following illegal votes were cast at the election for Kingsland: Four by persons under age, ten by persons voting in the wrong townships, three by persons convicted of infamous crimes, four by persons who did not reside in the county, eight by persons who had not resided in the county long enough to become qualified voters—total twenty-nine. Deducting from the 1009 votes returned for Rison 17 illegal votes cast for Rison, we have 992 legal votes for Rison. Deducting from the 1002 votes returned for Kingsland the 29 illegal votes cast for Kingsland, we have 973 legal votes for Kingsland. It thus appears that there was a majority of nineteen legal votes for Rison. In this estimate two votes are counted about whose identity there might have been some contest, but the exclusion of these could not change the result.

In the view we have taken of the case, it is unnecessary to consider the exclusion of certain depositions offered at the trial in behalf of Rison, or to consider the offer by citizens of Kingsland, made before the election, to pay $675 for the purpose of building a high school for colored people at Kingsland, if the county seat should be located at Kingsland.

The judgment of the circuit court is affirmed.