SHARP v. McINTIRE.

1. ELECTIONS—QUALIFICATIONS OF VOTERS—DOMICILE.
An essential qualification of a voter is that he shall have resided in the state six months, in the county ninety days and in the ward or precinct ten days immediately preceding the election at which he offers to vote.

2. SAME.
"Residence," within the meaning of the constitution and the statute prescribing the qualifications of electors, is synonomous with "home" or "domicile." To constitute a place of inhabitancy such residence requires its adoption as a fixed and permanent habitation, and not only a personal presence for the requisite time, but a concurrence therewith of an intention to make such place the true home.

3. SAME.
One who has a home or domicile in another state or territory cannot by a sojourn here, however long, acquire a residence in this state within the meaning of the constitution and statute, without abandoning his former domicile.

4. SAME—EVIDENCE.
While the unsworn declarations of a voter are inadmissible to impeach his qualifications as an elector, when made prior or subsequent to the time of voting, they are admissible for that purpose when made concurrently with the act of voting and in the presence of the judges of election.

*Appeal from the County Court of Lincoln County.*

AT THE general election of 1895, in Lincoln county, Colorado, Robert B. Sharp and Archibald McIntire were rival candidates for the office of county commissioner of said county. Upon the canvass of the votes cast at such election

for that office, McIntire was elected by a majority of four votes, and a certificate of election issued to him. His election is contested by Sharp upon the sole ground that there were cast, in Rush Creek voting precinct, No. 5, in said county, nine votes for McIntire which were illegal, by reason of the lack of the residence qualification of the voters casting the same, in this, to wit, that the true place of residence of eight of said illegal voters—Trinidad Gomez, Nazarus Gallegos, Andreas Medina, Victor Anallina, Vincent Garcia, Juan Martinez, Antonio Martinez and Francisco Quintana—was, at the date of said election, in the territory of New Mexico; and the true residence of one Alario Medina was at the time in Costilla county, Colorado. It is admitted in the pleadings that said votes were cast for McIntire. Trinidad Gomez was introduced as a witness on the part of contestor. His testimony was to the effect that his home, and also that of Francisco Quintana, Nazarus Gallegos and Antonio Martinez was at Cerro, N. M., where their wives and families lived; that they came to Lincoln county, Colorado, in the spring, to work during the summer, and at the close of their season's work returned to their homes and families at Cerro, N. M.; that he (Gomez) had been in the habit of so coming to Colorado since 1890; that the others had also been doing the same for several years; that in 1895 he came on March 27th, to remain eight months; that when he was subpœnaed as a witness in the case he was on his way home, having received word that his wife was sick; that the other parties named had then returned to their homes in New Mexico; that these parties did not bring their wives or families to Lincoln county. He testified that he did not know Andreas Medina, Alario Medina or Juan Martinez.

Sharp was sworn in his own behalf and testified that he was appointed watcher and challenger at the polls in Rush Creek voting precinct No. 5 at the election on November 5, 1895, and that he challenged the above named parties' right to vote at such election. Upon objection by counsel for contestee, witness was not allowed to testify to the conversa-

tion he had with these parties. His counsel thereupon offered to prove by him that he (Sharp), at the time these parties appeared to cast their vote, had the following conversation with them: That when Trinidad Gomez, Francisco Quintana and Nazarus Gallegos appeared at the polls to cast their vote, he asked each of them the following questions: " Q. Are you a married man ? " That they and each one of them answered: " Yes, I am." That Sharp then said to them and each one of them: " Q. Where do you live ? " That they and each one of them answered the said Sharp: " A. At Cerro, New Mexico." That said Sharp then asked them and each one of them: " Q. Where do your wife and family live ? " And that they and each one of them answered said Sharp that they lived at Cerro, New Mexico. He also offered to show by this witness that the same conversation occurred in the same interval, before they voted, with Andreas Medina, Vincent Garcia, Juan Martinez and Antonio Martinez, and that the conversations were identically the same, except that said voters did not state the name of the town, but limited their answers to the fact that they, their wives and children, lived and resided in New Mexico. Counsel offered to show, by the same witness, that he had a similar conversation, under similar circumstances, with Alario Medina, who stated that his residence and the residence of his family was in the San Luis valley, in Costilla county, Colorado.

Upon objection of counsel for contestee this evidence was excluded. The determination of the court below was adverse to contestor, and in favor of contestee. From this judgment Sharp prosecutes this appeal.

Messrs. TALBOT & DENISON, for appellant.

Messrs. KINKAID, EDDY & HART and Mr. T. J. EDWARDS, for appellee.

MR. JUSTICE GODDARD delivered the opinion of the court.

One of the essential qualifications of a voter prescribed by

our constitution and statute is that he shall reside in the state six months immediately preceding the election at which he offers to vote, in the county ninety days and in the ward or precinct ten days. Sec. 1, art. 7, of the Const.; sec. 1571, Mills' Ann. Stats.

The merits of this controversy, therefore, depend upon the construction to be given to the residence qualification thus prescribed. It is contended by counsel for contestee that the word "reside," as therein used, signifies to "dwell," "abide" or "live" in the state; and that when a person has actually lived in the state the specified time he meets this requirement. With this construction of the word we cannot agree. We think the residence therein contemplated is synonomous with "home" or "domicile," and means an actual settlement within the state, and its adoption as a fixed and permanent habitation; and requires not only a personal presence for the requisite time, but a concurrence therewith of an intention to make the place of inhabitancy the true home; and that one who has made a home or domicile in some other state or territory where his family reside, cannot, by a sojourn here on business or pleasure, however long, without abandoning such former domicile, acquire a residence in the constitutional and statutory sense. Such is the meaning and signification given to the word by the courts of other states when used for a like purpose in their constitutions. *Fry's Election Case*, 71 Pa. St. 302; 5 Metcalf, 587; *French v. Lighty*, 9 Ind. 475; *State v. Aldrich*, 14 R. I. 171.

In 5th Metcalf, *supra*, in answer to a question propounded by the house of representatives, the supreme court of Massachusetts, construing a similar provision of their constitution, held that the words "shall have resided" meant the same as "shall have had his domicile, or home," and that a student had no right to vote at the place where he resided for purposes of education, though he had been there more than a year, unless his domicile was also there. In *Fry's Election Case*, *supra*, Judge Agnew, speaking for the court, said:

"No one doubts that one domiciled in another state, but

resident here for a special purpose of business or pleasure, is ineligible to election. * * * It is equally clear that the electors of the state are those who have their homes within it, and not elsewhere. Their domicile is there, and their home is the place where they permanently reside, and to which they intend to return when away from it. It is also clear that one domiciled in another state cannot be an elector here, though he be resident here for some temporary purpose, or on some special business, and though his stay may be prolonged upward of a year. Therefore, when the constitution declares that the elector must be a resident of the state for one year, it refers, beyond question, to the state as his home or domicile, and not as the place of a temporary sojourn."

We think there can be no doubt that in adopting this constitutional provision the convention intended to adopt it with the construction that had theretofore been given it. And we think the court below erred in ignoring, as it evidently did, this necessary qualification of some of the voters challenged. It is further urged that the court also erred in excluding the alleged declarations of the parties. While it is held in some of the authorities that the unsworn declarations of a voter are inadmissible to impeach his qualification to vote, when made prior or subsequent to the time of voting, upon the ground that they are hearsay, and among them the case of *People v. Commissioners,* 7 Colo. 190, we know of no case that holds that such declarations are inadmissible when made concurrently with the act of voting, and constitute a part of the *res gestæ.* Abundant authority is found that upholds the admissibility of declarations made under such circumstances. Among them, see *City of Beardstown v. City of Virginia,* 81 Ill. 541 ; *Rucks v. Renfrow,* 54 Ark. 409 ; *Patton v. Coates,* 41 Ark. 111.

In *Gilleland v. Schuyler,* 9 Kan. 569, wherein it was held that statements of third parties as to the number of times and the names under which they voted were hearsay, and incompetent, and were excluded because relating to past transactions, yet the court say :

" These declarations were not made at the polls by persons conducting the election, and so as to make part of the *res gestæ;* nor do they accompany a principle fact which they serve to qualify or explain."

We think, therefore, that the declarations sought to be introduced in evidence in this case, having been made at the immediate time of voting, in the presence of the judges of election, were admissible, if properly proven; and the court erred in excluding them on the ground solely that they were hearsay. It appears that the conversation had with some of the parties was through an interpreter, and their answers were in Spanish. The witness, therefore, was competent to testify only to such declarations as he understood without the aid of an interpreter.

For the foregoing reasons, the judgment of the county court is reversed, and the cause remanded.

*Reversed.*