## W. F. JAMES v. THE STATE.

### No. 1819. Decided February 8, 1899.

**1. Evidence—Prosecutor's Explanation of Delay in Prosecuting.**

Where the offense (theft) was committed in December, 1896, but the prosecution was not instituted until March, 1898, and defendant had attempted to discredit the prosecutor on account of this delay, Held, competent to prove by the prosecutor, on re-examination, that the prosecution had been delayed at the suggestion of the sheriff.

**2. Theft—Opinion Evidence.**

On a trial for theft it is error, over defendant's objection, to permit the State's counsel to ask the prosecuting witness if he told the sheriff who he thought got his money, and to permit him to answer "Yes." The testimony was opinion evidence and hearsay.

**3. Same—Contemporaneous Thefts—Evidence of.**

On a trial for theft of money, evidence as to the missing of sundry articles of wearing apparel "about the same time," and finding the same in the mattress of the bed occupied by defendant and his wife, is inadmissible. Another distinct offense committed by defendant "about the time" does not show a contemporaneous crime.

**4. Letter as Evidence.**

Before it is competent to prove the contents of a letter written to defendant, proof must be made that the letter had been received by him, and the letter itself must be produced, or it must be shown that defendant had been notified to produce it, and had failed to do so.

**5. Theft—Charge.**

On a trial for theft of money, a charge of court is erroneous which, in effect, made the defendant's acquittal depend on the belief of the jury that the money alleged to have been stolen was the identical money paid to the defendant by the prosecuting witness.

**6. Same.**

The fact that defendant had in his possession certain money which he left with a third party, is not a circumstance against him, unless it was shown by the State, beyond a reasonable doubt, that it was the money stolen from the prosecutor.

APPEAL from the District Court of Hill. Tried below before Hon. J. M. HALL.

Appeal from a conviction for theft of money over the value of $50; penalty, two years imprisonment in the penitentiary.

The following statement of the material facts in the case, which is substantially correct, is taken from the brief for appellant: Appellant and his wife moved to the farm of the State's witness, J. F. Myrick, near Mertens, in Hill County, in the spring of the year 1896, for the purpose of renting and cultivating land, and remained upon the place as Myrick's tenants until the latter part of December, 1897, working the latter year upon shares, and residing in the same house with Myrick, who was a physician, from the time of their coming until March, 1897, at which time they moved into a house about sixty feet distant from that theretofore occupied, and continued to live in this house until their departure from the place in December, 1897. During the time of their occupancy of the house with Dr. Myrick, appellant's wife did the general housekeeping. According to Myrick's testimony, about December 21, 1896, he missed $300 that he had had in a bureau drawer in the house, the larger portion of which was in gold, but some in greenbacks. About six days prior to this time he had discovered said drawer in an open condition, but seeing some silver lying in the front part of it, his suspicions as to his loss were not aroused. On the next day after discovering the money gone, Myrick went to Hillsboro and reported the loss to Tom Bell, sheriff of Hill County, telling him who he thought got the money. No complaint was made against appellant until some time after he left Myrick's place, though, as above stated, he resided there for a year after the time of the alleged loss of the money, Myrick testifying that his reason for not preferring complaint sooner was that he was acting under Bell's instructions. No search was made for the money until about a month after the alleged loss, at which time search was made by Myrick and his daughter, Miss Alice Myrick, between the mattresses of the bed occupied by appellant and his wife, and there was at that time found some trimming and underskirts between said mattresses, Miss Myrick testifying that these articles were hers, and had been taken without her consent. In this connection it will be noted from the record that further testimony was offered by the State and admitted by the court, that of H. C. Myrick, a son of Dr. Myrick, the prosecuting witness, to the effect that in the latter part of January, 1897, he saw appellant wearing an undershirt that he recognized as his, and that it had been taken from him without his consent. That he had not missed it until that time, and had never made any charge against appellant for "stealing it."

Dr. Myrick never at any time searched for the money when alone.

It was shown that in the fall of 1897 appellant purchased a pair of mules, a wagon, and set of harness, which facts were by him admitted. That upon leaving Myrick's place in December 1897, which was known to Myrick, no secret being made of his departure, or where he was going,

he carried his household effects in his wagon to the house of Mr. and Mrs. W. C. White, near Abbott, in Hill County, and left with Mrs. White a purse of money, while he returned to Myrick's place for his wife. That during his absence thus occasioned, Mrs. White, true to that prominent and distinguishing characteristic of woman, opened the purse and counted therein $300 in gold. That no effort toward concealment of the money was made by appellant. That appellant and his wife remained at the White residence two or three weeks, going from there in the wagon to Groesbeck, Limestone County, Texas, and afterwards writing to the Whites from that point, no attempt being made to conceal where they were going. There was testimony of the additional State witness W. C. White to the effect that he wrote a letter to appellant to Groesbeck, in reference to a hog left in White's possession, in which he also stated that Dr. Myrick had missed some money, that appellant was accused of having taken it, and that he had better come back and fix it up. That he did not know whether appellant received the letter; that he received no reply to it. Appellant testified that he never received it. In Limestone County appellant "pitched a crop," breaking up his ground and planting some corn. Upon learning of his father's death in Mississippi, he was induced to dispose of his crop, and from there went, in the spring of the year 1898, to the Indian Territory. No knowledge of any charge of crime reached him until the occasion of his wife's arrest in Hill County, in the summer of said year, charged with the theft of this money, she being in Hill County at that time, near Mertens, on a visit to her relatives. Upon being apprised of this fact appellant came immediately and directly to Hill County, to Mertens, called Tom Bell, sheriff, by telephone, informed him of his presence there, and that if he was wanted for any charge to send there for him. He was there arrested on the following day, and was released on bond.

It was shown that appellant paid Myrick his rents, there being no trouble between them in that respect, and that for his crop of the year 1897, raised on Myrick's place, he realized the sum of $190.

On behalf of appellant, by the proof, it was shown that in the early days of December of the year 1896, while he and his wife were living upon Myrick's place, and in the same house with him, under the circumstances above stated, Myrick produced an abortion upon plaintiff's wife. To this direct effect is the testimony of Mrs. James and of Mrs. Tanner.

The purchase of the wagon, mules, and harness by appellant, and the fact of his possession of the money in gold coin as testified to by the State's witness Mrs. White, all of which facts were admitted by him and also by him testified to, were shown to have been made by him with the money already in his possession that he realized from his crop of 1897, and to have been occasioned by the payment to him by said Myrick, about December 6, 1896, of the sum of $350 in settlement and

as a compromise of appellant's claim of damages against him for producing an abortion on his wife. The fact of this sum being so paid by Myrick, and mostly in gold coin, was established by the testimony of appellant, of Mrs. James, T. Tanner, Mrs. Tanner, Will Tanner, and Ed Tanner, all of whom were present at the time of the payment.

By the witness J. A. Herring, a brother of the State's witness Mrs. White, it was shown by appellant that in the spring of 1897 he approached Herring for the purpose of borrowing from him $50. That upon Herring's requiring some security in the event he made the loan, appellant offered to give him a mortgage upon his cotton crop. Knowing that Myrick was appellant's landlord, Herring approached him for the purpose of ascertaining whether appellant owed Myrick anything, and if the mortgage would be all right. In conversation had with Myrick respecting this matter, he stated to Herring that appellant owed him nothing; that he, Myrick, had had a settlement with appellant, and had paid him enough money for him not to want to borrow any. Herring made the loan upon appellant executing the mortgage. Before doing so Herring asked him why it was he was desiring to borrow money from him when, as Myrick had stated, enough money had been paid him as not to cause him to need it. Appellant replied that it was true that Myrick had paid him $350, but that he had promised Myrick not to use it that year, Myrick having requested this of him, fearing that his children would discover the fact of his having paid it to appellant. That before this appellant had told said witness about his trouble with Myrick, and his claim for damage against him for having produced the abortion on his wife, and in this conversation appellant stated to the witness that the $350 paid him by Myrick was in settlement of the matter.

Ed. Herring also testified to having heard Myrick make the statement to J. A. Herring to the effect that he had had a settlement with appellant, and had paid him sufficient money as would not cause him to need to borrow any.

Appellant and his wife denied any knowledge of or connection with the loss of the money or the articles of wearing apparel above referred to.

It was shown that the State had dismissed the case against Mrs. James, appellant's wife, similar in charge to this one; and that the State's witness, Dr. Myrick, stood indicted in said court for the offense of having caused said abortion upon Mrs. James.

*McKinnon & Carlton* and *Smith & Phillips*, for appellant.

*Robt. A. John*, Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted in the District Court of Hill County of the theft of money over the value of $50, and his punish-

ment assessed at two years confinement in the State penitentiary, and he prosecutes this appeal.

When the State's witness Dr. J. F. Myrick was on the stand, it was shown that this offense was committed in December, 1896, and no prosecution was instituted against appellant until March 16, 1898. The State, in order to account for the delay in the prosecution, asked him, "Why did you not have him [meaning appellant] arrested sooner?" To which he answered that he was carrying out the instructions of Tom Bell, who was the sheriff of the county. We believe it was competent for the State to bring out from the witness, on re-examination, this explanation for his delay. The attempt of the defendant was to discredit said witness, because, if a theft had been committed by appellant of his property, he knew it in December, 1896; and under the circumstances, ordinarily, it would be expected that he would have instituted the prosecution sooner. We believe it was competent for him to account for the delay, as was done in this case, by stating that he did so at the suggestion of the sheriff. This testimony was not of a character in itself calculated to prejudice appellant, as in Bennett v. State, 39 Texas Criminal Reports, 639, but merely to support the witness whose credit had been attacked because of his failure to prosecute sooner.

While the witness Dr. J. F. Myrick was on the stand, the court permitted State's counsel to ask him the following question: "Did you tell Bell whom you thought got your money?" and said witness Myrick answered, "Yes,"—to which question and answer defendant then and there excepted. We think that this testimony was inadmissible, because it calls for the opinion of the witness, and was hearsay, and, in effect, it was bringing before the jury the opinion of the witness as to the guilt of appellant, and was therefore injurious to his rights.

Appellant complains of the court permitting the State's witnesses Miss Alice Myrick and H. C. Myrick, in response to questions propounded by State's counsel, to testify that they missed certain articles of wearing apparel, and found certain articles of wearing apparel belonging to said witnesses in the mattress of the bed occupied by appellant and his wife; and the said H. C. Myrick testified that he saw the defendant wearing an undershirt which he claimed to be his. Said witnesses further testified that said articles had been taken without their consent. Appellant objected to the testimony on the ground that there was no theft shown by appellant of said articles, and that, if said articles were stolen by appellant, they were distinct offenses, and it was not shown that they were taken at the same time the money was taken. The court explained the bill of exceptions by stating "that Mrs. H. C. Myrick and H. C. Myrick testified that they missed the articles of clothing found in the bed about the time the money was stolen, and for that reason the court thought the evidence admissible." It will be noticed here that nothing was said by the court as to the time when the undershirt may have been taken, and his explanation is merely with reference to the

clothing found in the bed, and he says that was missed about the time the money was missed. The word "about" is a very comprehensive term. It may cover a considerable length of time. The rule is that other offenses committed at the same time (that is, contemporaneous) may be shown; and there may be some cases which stretch the rule beyond this, but such cases can only be supported where such other crimes constitute a part of a system connected with the crime under investigation. Now, a distinct offense committed "about the time" of the offense for which defendant was on trial does not show such other offense to have been committed at the same time. As far as the bill shows, the theft of the clothing found in the bed was not committed at the same time that the money was taken. If so, the court should have made the bill show this accurately. As to the undershirt, the court makes no explanation at all, but leaves it as the original bill left it,—a distinct offense committed at a different time. We would furthermore observe, as to the clothing found between the mattress, that no connection is shown between appellant and this clothing. If these articles were stolen, his wife may have taken them without any privity on his part. We do not think this testimony was admissible, and its effect was of a very injurious character, as against appellant. Long v. State, 39 Texas Crim. Rep., 537.

We think the court erred in refusing to strike out the contents of a certain letter shown by the witness White to have been written by him to appellant. As soon as practicable, appellant made a motion to strike out same. We do not believe it is competent to prove the contents of a letter shown to have been written by one person to another, without some proof that the latter received the letter. The mere mailing of the letter would not be plenary proof of this fact. More than this, before the contents of said letter were admissible, the letter itself should have been produced, or notice given appellant to produce the same.

Appellant complains of the following portion of the court's charge: "You are instructed that if you believe from the evidence that J. F. Myrick paid defendant the money described in the indictment as damages or hush money, or for other purpose, or for having caused an abortion on the defendant's wife, if you believe said Myrick did produce such abortion, if any, then you will find the defendant not guilty;" his objections being "that the acquittal of the defendant was made to depend, by said charge, solely upon the payment to the defendant of the money charged to have been stolen in the indictment, and implies that the defendant had rested his innocence and his defense upon the fact that the money alleged to have been stolen was the identical money paid to him by the prosecuting witness, J. F. Myrick, when in truth and in fact no connection was shown by the evidence, and it is not shown by any of the evidence that the money alleged to have been stolen, and as testified to by the witness Myrick, was that paid the defendant by said Myrick as damages for having caused an abortion on

his wife." We think appellant's contention is sound, and said charge should not have been given. Before appellant could be convicted, the jury were bound to believe beyond a reasonable doubt that appellant fraudulently took the certain money described in the indictment from the prosecutor, Myrick. As to the money appellant was shown to have left with Mrs. White, unless the State showed beyond a reasonable doubt that that was the identical money stolen from the prosecutor, then the jury could not regard the possession of.said money as a circumstance against appellant; and the court should have simply formulated his charge in some such shape, presenting the issue plainly to the jury. For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

DAVIDSON, Presiding Judge, absent.