### REID et al. v. KING, Co. Atty. (No. 630.)

(Court of Civil Appeals of Texas. Beaumont. Jan. 22, 1921.)

**1. Animals ⬩50(2) — Burden on contestants of stock law election to show lack of qualification in signers of petition.**

When petition for a stock law election under Vernon's Sayles' Ann. Civ. St. 1914, art. 7235, was received and passed upon favorably by the commissioners' court, the legal presumption is that it was sufficient, and, the court below having sustained the petition, the burden was on contestants of the election to show lack of qualification in the signers claimed by them.

**2. Animals ⬩50(2) — Person who had moved out of district when petition for stock law election filed not qualified signer.**

A person who owned land and lived in the subdivision when he signed petition for stock law election under Vernon's Sayles' Ann. Civ. St. 1914, art. 7235, but had moved just across the line out of the district when the petition was filed, was not a qualified signer at such time.

**3. Animals ⬩50(2)—Evidence of contestants of stock law election held insufficient to show signer of petition disqualified because nonresident.**

In suit to contest stock law election under Vernon's Sayles' Ann. Civ. St. 1914, art. 7235, on the ground that certain signers to the petition were disqualified, evidence held insufficient to meet the burden of proof resting on contestants to show the disqualification of a particular person on the theory that he was a nonresident of the district.

**4. Animals ⬩50(2) — Person forced to leave district temporarily not disqualified signer of stock law election petition.**

A signer of petition for a stock law election under Vernon's Sayles' Ann. Civ. St. 1914, art.

---

7235, who, when his house burned in the district, with his children, his wife being dead, moved some 200 yards across the line of the district and lived with his mother, was not disqualified thereby to sign the petition; he having had the intention to return and build a house.

**5. Animals ⬥50(2) — Signer of petition for stock law election who sold land and moved from district disqualified.**

Signer of petition for stock law election under Vernon's Sayles' Ann. Civ. St. 1914, art. 7235, who had sold his land and moved out of the district when the petition was filed, was disqualified.

**6. Animals ⬥50(2) — Signer of petition for stock law election who did not own land disqualified.**

Signer of petition for stock law election under Vernon's Sayles' Ann. Civ. St. 1914, art. 7235, who, though he lived in the district, did not own any land in it, was disqualified.

**7. Animals ⬥50(2)—Heir of deceased resident landowner qualified signer and voter at stock law election.**

Signer to petition for a stock law election under Vernon's Sayles' Ann. Civ. St. 1914, art. 7235, who lived on part of his deceased father's homestead as heir, had such an interest in the land as made him a legal signatory to the petition and voter at the election.

**8. Elections ⬥293(2)—Declarations of voters incompetent to show disqualification.**

On contest of an election as a stock law election under Vernon's Sayles' Ann. Civ. St. 1914, art. 7235, the declarations of voters made before or after the election are incompetent to show that by reason of age or residence they were not qualified to vote.

**9. Animals ⬥50(2)—Evidence of contestants of stock law election insufficient to show signers not qualified.**

On contest of a stock law election under Vernon's Sayles' Ann. Civ. St. 1914, art. 7235, for disqualification of certain signers of the petition therefor, evidence *held* insufficient to meet contestants' burden to show that a particular signer was not a legally qualified signer and voter as a landowner.

**10. Gifts ⬥25—Title to land passes by verbal gift accompanied by possession and improvements.**

Title to land will pass by verbal gift accompanied by possession and improvements by the donee.

**11. Animals ⬥50(2) — Evidence sufficient to sustain finding signer of petition for stock law election qualified; "about."**

On contest of a stock law election under Vernon's Sayles' Ann. Civ. St. 1914, art. 7235, for disqualification of certain signatories to the petition, evidence *held* sufficient to sustain the trial court's finding that a given signer was qualified when the petition was filed, he having testified that he moved to the district "about" a date which would have qualified him, "about"

signifying no certain date, but being a relative term giving a margin for moderate variation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, About.]

Appeal from District Court, Nacogdoches County; L. D. Guinn, Judge.

Suit by Alex Reid and others against L. G. King, County Attorney. From judgment for defendant, plaintiffs appeal. Affirmed.

S. M. Adams, of Nacogdoches, for appellants.

J. M. Marshall and L. G. King, both of Nacogdoches, for appellee.

O'QUINN, J. This suit was brought by appellants against appellee, L. G. King, county attorney of Nacogdoches county, for the purpose of contesting a stock law election held in a certain subdivision of said county to determine whether horses, mules, jacks, jennets, and cattle should be permitted to run at large in said subdivision. The case was tried before the court, and judgment rendered sustaining the validity of the election, from which judgment the appellants have appealed.

The petition was filed January 1, 1920, with 58 names signed thereto. The election was ordered on January 12, 1920, to be held on February 28, 1920. The subdivision was composed of the Campbell and Trinity school districts, combined.

As disclosed by the petition of contestants, the validity of the election was assailed as void on the ground that the petition for election was not signed by the required number of freeholders. The petition, as same appears in the record, contains 58 names, and appellants contend that D. L. Campbell, A. A. Price, John Richardson, E. Y. Bass, A. C. Tarrant, H. J. Richardson, S. W. Richardson, R. H. Ainsley, W. M. Tindall, and W. S. Walker (evidently intended for John S. Walker), were not qualified resident freeholders of the subdivision designated by the commissioners' court, and in which the said election was held. The law required the signature of 50 freeholders, and if the 10, or 9 of the 10, challenged by appellants, were not legal signers, then the election was void, and the judgment must be reversed.

There are no findings of fact, nor conclusions of law found by the court, in the record; nor does it appear that any were requested.

Article 7235, Vernon's Sayles' Civil Statutes, under which the election was held, provides:

"Upon the written petition of one hundred freeholders of any" county, "or upon the petition of fifty freeholders of any such subdivision of a county as may be described in the petition, and defined by the commissioner's court * * * the commissioners' court of said county shall

order an election to be held in such county or such subdivision of a county * * * on the day named in the order, for the purpose of enabling the freeholders of such county or such subdivision * * * to determine whether," etc.

Article 7239 provides that said election shall be held not less than 30 days from the date of the order for the election, and article 7244 provides that—

"No person shall vote at any election under the provisions of this chapter, unless he be a freeholder and is a qualified voter under the Constitution and laws."

Appellants' first assignment of error is as follows:

"The court erred in holding the petition for said election was good and sufficient because it did not contain the names of 50 resident freeholders and voters at the time it was filed with the commissioners' court, January 1, 1920, asking the said election be held, in that the petition contained 58 names, and the following were not resident freeholders and qualified to vote under the Constitution and laws of Texas, at the filing of same, to wit: D. L. Campbell, A. A. Price, John Richardson, E. Y. Bass, A. C. Tarrant, H. J. Richardson, S. W. Richardson, R. H. Ainsley, W. M. Tindall, and John S. Walker."

[1] When the petition was received and passed upon favorably by the commissioners' court, the legal presumption is that the petition was sufficient, and, the court below having sustained same, the burden was upon appellants to show lack of qualification in the signers assailed. Garcia v. Cleary, 50 Tex. Civ. App. 465, 110 S. W. 176; Linger v. Balfour, 149 S. W. 795.

An inspection of the names signed to the petition for the election, as shown by the record, does not show that of D. L. Campbell. No such name appears thereto. The names "Jim Campbell," "O. G. Campbell," and "R. L. Campbell" do appear, but the testimony offered was as to "D. L. Campbell" and "Bud Campbell," and there is nothing in the record to show that either of them were in fact "D. L. Campbell." The assignment as to him falls.

[2] It appeared from the evidence that A. A. Price owned land and lived in the subdivision when he signed the petition, but had moved just across the line out of the district at the time the petition was filed. The assignment as to him is sustained.

[3] Appellants challenge John Richardson, H. J. Richardson, and S. W. Richardson. There is no testimony in the record as to either John Richardson or H. J. Richardson, unless the witness A. A. Price alludes to them. He says:

"I know the negroes Jess Richardson and Joe Richardson. I don't think they live in the Trinity district, but ain't certain. I think they live in the Nacogdoches independent district. I am

assessor out there and I did not assess them. These negroes are named Henry and Joe. The line runs right along about their house and they told me they were out of the district. I couldn't say whether they own any land in the Trinity district or not; that is, for sure."

This is all the testimony in the record as to them, and it will be seen that John Richardson is nowhere named. It may be that Henry and H. J. Richardson are the same, but the record does not so show. The assignment as to John Richardson falls, and we do not think the burden of proof resting on appellants to show the disqualification of H. J. Richardson has been met, and the assignment as to him is overruled.

[4] The testimony shows that S. W. Richardson owned a farm situated in the Trinity district on which he lived up to about May 9, 1919, when his house burned, and he with his children, his wife being dead, moved some 200 yards across the line of the district, and lived with his mother. He testified:

"I did live in the Trinity district until May 9, 1919, and I got burned out. I have not lived in Trinity district since I got burned out. I have a farm over there and I work there. My family and I have been staying over in the Nacogdoches district since my house burned down. That was my house that burned and it was in Trinity district. I saved a few household goods when my house burned. My chickens, cows, farm implements are there now. That is my place and I am building a home there and I intend to move back there. I moved over with my mother until I could build and move back. I couldn't move back until I built a house."

Clearly he had not acquired a new residence at his mother's, but his absence from his own home and residence was involuntary and only temporary. A removal to divest one of his right to vote must be accompanied by an intent to make a new domicile and quit the old. Mere removal, coupled with an intent to retain the original domicile and return to it, will not constitute a change. He was a legal freeholder and voter in the Trinity district. Aldridge v. Hamlin, 184 S. W. 602.

[5] R. H. Ainsley, it appears, had sold his land and moved out of the district at the time the petition was filed, and the assignment as to him is sustained.

[6] W. M. Tindall testified that while he lived in the district he did not own any land in same, and the assignment as to him is sustained.

[7] E. Y. Bass, it appears, lived on a part of his father's old homestead, in the district, and his father being dead, and he being an heir to the estate, we think he had such an interest in the land as made him a legal signer and voter at said election.

[8, 9] The testimony, as shown by the record, to show that John S. Walker did not own land situated in and reside in the district, is as follows:

"Mr. Adams, for the plaintiffs: If the court please, we offer the record which shows that Mr. John Walker lived in the Campbell district—one of the districts, * * * and owned 92 acres of land but sold it and didn't at the 1st of January own same as he sold to Mast, the date of which I have forgot."

The record referred to by counsel does not appear in the statement of facts.

Dave Burrows testified:

"I know John S. Walker, and I know where he told me the 92 acres of land that he owned was, that is, where he told me it was. I know where that 92 acres of land is, and it is not located in either the Trinity or Campbell districts. He did not own any other property that I know of except the 92 acres of land on the Arriola. The strip of land that I told you about awhile ago not being in any district is the Walker stuff. It does not join the Trinity line; that is, the Walker line doesn't. It is in the Shady Grove district. As to who owns it now, he said he sold it to Mr. Mast. He never did live on that land. Mr. Walker lived with Mr. Faulkner last year."

This testimony is very unsatisfactory, indefinite, and hearsay. In a contest of an election, the declarations of voters, made before or after the election, are not competent to show that by reason of age or residence they are not qualified to vote. The burden was on appellants to show that Walker was not a legal signer and voter, and we do not think they have done so. Davis v. State, 75 Tex. 420, 12 S. W. 960; Rucks v. Renfrow, 54 Ark. 409, 16 S. W. 6, 12 L. R. A. 362.

[10] A. C. Tarrant lived in the district on a tract of land that he testified his father gave to him, and which he claimed as his own, and occupied and improved under the gift from his father, although he did not have a deed to same. It has long been the settled rule that land will pass by verbal gift, accompanied by possession and improvements, and hence he was the owner of the land he occupied. Willis v. Matthews, 46 Tex. 478.

[11] He was further challenged on the ground that he had not been in the county six months at the time the petition was filed, January 1, 1920. He testified that he moved from Callahan county, Tex., to Nacogdoches county "about" July 15, 1919. The word "about" signifies no certain date. It is a relative term which may indicate one thing when applied to one state of facts, and another under different circumstances. It gives margin for moderate variation, and negatives the idea that exact precision is intended. When used in regard to time it is a very comprehensive term, and · may, in certain instances, cover a considerable extent of time. C. J. vol. 1, p. 338; James v. State, 40 Tex. Cr. R. 190, 49 S. W. 401.

Since counsel for appellants indicated in his brief that this signer was one of the two that he relied upon for a reversal, and it being presumed that he urged this issue before the court below, and the court having found against him, we think the testimony supports the court's finding that Tarrant was a legal signer at the time the petition was filed.

The judgment of the lower court, and the inferences to be drawn from same, when considered in connection with the testimony in the record, we believe to be correct, and the same is here affirmed.