### STATE ex rel. HUNT v. SCANLAN.
### No. 9597.

Court of Civil Appeals of Texas. San Antonio.

Oct. 17, 1934.

Rehearing Denied Nov. 14, 1934.

Galbraith & Goodrich, of Brownsville, and Charles C. Bowie, of San Benito, for appellant.

Tarlton, Brady & Cox, of Brownsville, for appellee.

MURRAY, Justice.

This is a suit in the nature of a quo warranto proceeding filed in the name of the state of Texas, on the relation of T. R. Hunt, against George N. Scanlan, questioning his right to hold the office of mayor of the city of Port Isabel.

The suit presents the one question of whether or not appellee, George N. Scanlan, was at the time of his election, and is at the present time, a resident of the city of Port Isabel, and therefore qualified to hold the office of mayor of that city.

Upon the request of the attorney for appellant, the trial judge made and filed his conclusions of fact and law, which are as follows:

"I find as a matter of fact:

"1. That an election was duly and legally held within and for the City of Port Isabel, Texas, on the 3rd day of April, 1934, for the election of a Mayor and two Commissioners to serve said City for a term of two years.

"2. That Respondent, George N. Scanlan, in the manner and within the time required by law, duly filed with the City Commission of said City his application to have his name placed on the official ballot of said election as a candidate for the office of Mayor, and that Respondent's name was duly printed on the official ballot used by the voters in casting their votes at said election.

"3. That the votes cast at said election were duly canvassed, and that at said election Respondent, George N. Scanlan, received the highest number of votes cast for any candidate for Mayor, namely one hundred sixty-four (164) votes, and that there were cast for Relator, T. R. Hunt, one hundred forty-nine (149) votes, for S. I. Jackson seventy-nine (79) votes, and for Samuel Woolston forty-seven (47) votes.

"4. That Respondent was furnished with a certificate of election as Mayor at such elec-

tion, thereafter duly qualified as Mayor of said City of Port Isabel by taking the oath and giving the bond as required by law, and has ever since duly acted as such Mayor and performed the duties of such office.

"5. That said City of Port Isabel was incorporated in 1928, and that the territory now embraced in the city limits of said City of Port Isabel was formerly known and designated as Point Isabel but will hereinafter for convenience be referred to only as 'Port Isabel.'

"6. That Respondent married in Port Isabel in June, 1907, and built a home there where he resided with his wife and children, who remained at Port Isabel with Respondent until it became necessary to send said children to school; that Port Isabel did not then have proper and adequate school facilities and the roads between Port Isabel and Brownsville were in such poor condition as to prevent said children from commuting back and forth between Port Isabel and Brownsville to attend school; that Respondent's wife moved to Brownsville and placed said children in school; that said children attended school in Brownsville practically continuously from the time of said removal until graduation from high school; that the eldest son is now attending medical school at Dallas, Texas; that the youngest son, now 19 years of age, is still attending school in Brownsville at the Valley Business College.

"7. That late in the year 1925, Respondent acquired Lot Six and the Northwest one-half of Lot Five, in Block No. 45-A, in the City of Brownsville, Texas, and erected a dwelling thereon, into which Respondent's wife and children moved that same year and where his wife has remained ever since except for returning to Port Isabel from time to time for visits with her husband and except for spending her summers with Respondent during several of the years since 1925, and at which place Respondent's children also remained except for frequent visits with their father at Port Isabel and as to the oldest son except during the last several years that he has been attending schools of higher education away from Brownsville.

"8. That Respondent either paid, or furnished the money with which to pay, the monthly light and water bills accruing against said house in Brownsville during said time it has been occupied by Respondent's wife and children; that the telephone connected with said house in Brownsville is listed in Respondent's name; that during the years 1929, 1930 and 1931, the names of one or both of Respondent's children were by Respondent's wife listed with the Census Enumerator of the Brownsville Independent School District.

"9. That Respondent and his wife, in August, 1928, in executing a deed of trust to J. J. Champion, Trustee, on certain property in Port Isabel, designated said one-half of Lot Five and all of Lot Six, Block 45-A, City of Brownsville, as their homestead, where they represented they then resided.

"10. That Respondent and his wife are not separated.

"11. That Respondent usually spends his week ends with his wife in Brownsville, coming to Brownsville usually on Saturday evenings and remaining with his wife Sunday, returning to Port Isabel either Sunday evening or Monday morning, but otherwise spends practically all of his time in Port Isabel.

"12. That it has been, and is, Respondent's intention that as soon as the children are educated that his wife will move back to Port Isabel and there remain permanently with Respondent; that the removal of Respondent's wife and children to Brownsville was only temporary.

"13. That Respondent is generally regarded as one of the oldest residents of Port Isabel.

"14. That Respondent moved to Port Isabel and established his residence there about the year 1901, and has been physically present in said Port Isabel practically continuously ever since, same being for a period of over thirty years.

"15. That Respondent has made his living, and conducted his business, same being practically his sole business, in Port Isabel for over thirty years last past.

"16. That for over thirty years last past Respondent has paid his poll tax as a resident of Port Isabel, and has voted in said Port Isabel during that period of time.

"17. That Respondent has held many official positions in said Port Isabel, i. e.:

"a. Elected County Commissioner of Precinct No. 1, Cameron County, Texas, in 1912, as a resident of Port Isabel, which is located in said Commissioner's Precinct;

"b. Served two terms as Justice of the Peace of Precinct 1, Cameron County, Texas, in which Justice Precinct Port Isabel is located, maintaining office as such Justice of the Peace in Port Isabel—this being immediately prior to, simultaneous with, and im-

mediately subsequent to holding office as County Commissioner;

"c. Elected City Commissioner, said City of Port Isabel, on incorporation of said City in 1928; served as such 1928-1930.

"d. Elected Mayor, said City of Port Isabel, 1930; served 1930-1932.

"e. Re-elected Mayor, said City of Port Isabel 1932, served about one year;

"f. Re-elected Mayor, said City of Port Isabel 1934.

"18. That Respondent now sleeps, and for many years last past has slept, at night within the city limits of said Port Isabel during all the nights of the week except usually not on week-ends.

"19. That Respondent now eats, and for many years last past has eaten, practically all of his meals within the city limits of said Port Isabel except usually not on week-ends.

"20. That Respondent now has, and for many years last past has had, his washing done within the city limits of said Port Isabel.

"21. That Respondent now has, and for many years last past has had, practically all of his clothing and personal belongings within the city limits of said Port Isabel.

"22. That Respondent now resides and for many years last past has resided within the city limits of said Port Isabel, Texas.

"I conclude as a matter of law:

"1. That Respondent, George N. Scanlan, is now, and for many years last past has been, a resident of said City of Port Isabel, Texas.

"2. That Respondent, George N. Scanlan, is the duly elected, qualified and acting Mayor of said City of Port Isabel, Texas."

The above findings of fact are supported by the evidence and are approved by us as being correct.

We also agree with the conclusions of law made by the trial judge. It is true that appellee's wife and children had resided in Brownsville for a number of years, and that ordinarily a married man's domicile is presumed to be where his wife resides, but, where it is shown that the wife is residing away from the place of abode of the husband for the purpose of educating the children and the husband remains where he has his business, only spending the week-ends with his wife and children, the husband does not lose his residence in the place from which his wife has moved. Especially is this true in the light of the many other circumstances found by the trial judge to exist in this cause.

The fact that the appellee and his wife executed a deed of trust in which they designated the premises where the wife and children resided, in the city of Brownsville, as their homestead, and also listed their children with the census enumerator of the Brownsville independent school district, was not sufficient to overcome the strong circumstances in this case which are sufficient to establish the fact that appellee had resided for many years in Port Isabel. Aldridge v. Hamlin (Tex. Civ. App.) 184 S. W. 602; Reid v. King (Tex. Civ. App.) 227 S. W. 960; Williams v. Barber (Tex. Civ. App.) 64 S.W.(2d) 1048; McCharen v. Mead (Tex. Civ. App.) 275 S. W. 117; 16 Tex. Jur. p. 48, § 39; 20 Corpus Juris p. 68, § 26.

The judgment is affirmed.