126

## McBRIDE v. CANTU.
### No. 10959.

Court of Civil Appeals of Texas.
San Antonio.

Sept. 18, 1940.

S. L. Gill and Kennedy Smith, both. of Raymondville, and Sam G. Reams, of Falfurrias, for appellant.

F. G. Garza and Gerald Weatherly, both of Falfurrias, and E. G. Lloyd, Jr., of Alice, for appellee.

NORVELL, Justice.

James McBride and Lino Cantu were the only candidates for the Democratic nomination for the office of County Commissioner of Precinct No. 3, of Brooks

County, Texas, at the Democratic primary election held on July 27th, A. D. 1940.

The Democratic Executive Committee, after the primary, met, canvassed the returns and declared the results of said election, which were that McBride had received 162 votes and Cantu, 165 votes. Shortly after this action by the Democratic Executive Committee of the county, McBride brought proceedings to contest the election before said committee. The County Committee held that McBride had a majority of the legal votes and consequently was the duly nominated candidate of the Democratic party for the office in question.

From this ruling Cantu took the case to the District Court of Brooks County, where it was tried at a special term before Hon. Cullen W. Briggs, Judge of the 117th District Court of Nueces County, who had been designated as trial judge by the presiding judge of the Fifth Administrative Judicial District of Texas.

Trial was to the court, which entered judgment that Lino Cantu had received a majority of the legal votes cast for the nomination for the office of County Commissioner, Precinct No. 3, Brooks County, Texas. Cantu was declared to be the Democratic nominee and candidate for the position involved. McBride brings the case here.

Cantu in this court has moved to dismiss the appeal for want of jurisdiction, contending that the provisions of Article 3148, Vernon's Ann.Tex.Civ.Statutes, were not complied with in bringing the contest before the County Democratic Executive Committee; that said committee had no jurisdiction, and consequently the District Court and this court are without jurisdiction. We have concluded that McBride, in filing the contest, complied substantially with the provisions of this applicable statute, and that the motion is without merit; it is therefore overruled.

McBride, in the trial court, attacked the validity of the votes of eight persons who had voted for Cantu. Cantu in turn, under proper pleadings, introduced evidence tending to show that one vote cast for McBride was illegal. The trial court sustained three of McBride's challenges and it was conceded by McBride that the vote cast for him and challenged by Cantu was illegal and should not be counted. The vote as determined by the District Court was: Cantu 162; McBride 161.

McBride, by proper assignments of error, challenges in this court the trial court's findings of fact, made and prepared upon proper request, supporting the conclusions that the votes of the following named persons were legal and valid votes, namely: Jose Ruelas and his wife, Arcadia Ruelas, Adela Villarreal, Petra Baldomar and Lucia G. Pena. McBride contends that the first three named persons were not duly qualified electors of Commissioner's Precinct No. 3 of Brooks County, in that all of said parties were residents of Hidalgo County, Texas.

The trial court found that the residence of Jose Ruelas and wife was in voting and Commissioner's Precinct No. 3, Brooks County, where they had continuously maintained their residence and owned their home and 200 acres of land for approximately twenty-four years, on and prior to July 27, 1940; and that said Jose Ruelas and his wife had paid their poll taxes and possessed the other requisites entitling them to vote in such election in the aforesaid precinct.

The trial court also found that the residence of Adela Villarreal was in voting and Commissioner's Precinct No. 3, in Brooks County, Texas, where she was born, and where she and her husband, Gilberto Villarreal, since marriage had continuously maintained their residence up to and including July 27, 1940; that they owned a home in said precinct and county; and that the said Adela Villarreal had paid her poll tax and possessed the other requisites entitling her to vote in such election in the aforesaid precinct.

McBride contends that these findings of fact are against the overwhelming preponderance of the testimony. The statement of facts shows that in September, 1939, Jose Ruelas and wife moved to McAllen, Hidalgo County, Texas, closing up their home in Brooks County and taking most of their furniture with them. The farm which they owned in Brooks County was leased and Ruelas went into business in McAllen for a time and later stayed there looking for work.

Ruelas testified that as there was no high school in Precinct No. 3, Brooks County, he took his family to McAllen for the purpose of placing his children in school, and not for the purpose of making a home; that when his children finished school at McAllen he would come back to his home in Brooks County; that he rendered and

paid his poll tax and other taxes in Brooks County for 1939 and 1940; that he had voted in Precinct No. 3 in a school election held in April, 1940, and that he and his wife had voted in every election for about twenty-four years in Brooks County and had not voted elsewhere.

The statement of facts discloses that Adela Villarreal was born and reared in Brooks County and married Gilberto Villarreal in Brooks County in 1939. In March, 1940, she and her husband moved to Mission, Hidalgo County, Texas, where they occupied two furnished rooms in the home of a brother-in-law of the husband. She testified that her husband went to Mission looking for work; that he had a job in a Mission cafe from April to June, when he lost it and then after a short time went to work for the Sun Oil Company.

She also testified that she and her husband claim Brooks County, where they own a furnished home, as their residence and that Mission is not and has not been their home; that her husband's work with the Sun Oil Company is temporary, and when it is finished, she and her husband intend to return to their home in Brooks County.

■ If the testimony of the witnesses, above set forth, is to be given any weight or consideration at all, it clearly supports the theory that the absence of these parties from Brooks County was temporary and that their removal was not made with the intention of abandoning their respective residences in Brooks County. The issue therefore presented is whether or not, under the terms of Article 2958, Vernon's Ann.Tex.Civ.Statutes, evidence of intention can be legally considered in determining the residence of a married person for voting purposes.

The appellant relies upon the case of Garvey v. Cain, Tex.Civ.App., 197 S.W. 765, 772, wherein the Beaumont court held that "Our present statute seems to clearly enough define what is meant by 'residence,' that is, actual physical living in a place, thus furnishing a test which can be practically applied by election officers and courts, a test of fact, instead of an abstract test of 'intention,' which necessarily could not be applied by any one except the voter himself, and by him in as many different ways and in reference to as many different places as might suit his convenience at different times."

We are not here concerned with the question of the residence of a single man, under the provisions of Article 2958. The question of whether or not the intention of a married person may be considered in determining his legal residence for voting purposes is no longer an open question in this jurisdiction. While it may be conceded that cogent and persuasive arguments may be marshalled in support of the rule laid down in Garvey v. Cain, holding that the residence of a married person is "one purely of fact," the late Chief Justice Fly of this court, expressly disapproved of the doctrine of the Garvey case advanced by appellant here, and in Huff v. Duffield, Tex. Civ.App., 251 S.W. 298, 300, quoted with approval the following from Reid v. King, Tex.Civ.App., 227 S.W. 960 (decided by the Beaumont Court of Civil Appeals, subsequent to Garvey v. Cain, supra): "A removal to divest one of his right to vote must be accompanied by an intent to make a new domicile and quit the old. Mere removal, coupled with an intent to retain the original domicile and return to it, will not constitute a change."

■ The testimony of a witness as to his intention is, of course, not necessarily controlling. It is, however, an element which may be considered by the authority authorized to determine fact issues—the jury or the trial judge. In our opinion the correct rule is stated in Stratton v. Hall, Tex.Civ.App., 90 S.W.2d 865, 866, by the El Paso Court of Civil Appeals, wherein it was held that although the declaration of a voter as to his intention is not controlling it is an element which may be considered. In other words, the question of the residence of a married person for voting purposes under Article 2958, is one which "must be determined by reference to the actual facts and circumstances; one of which will be his intention."

■ It is our holding that the trial court's findings in regard to legality of the three votes above discussed are supported by the testimony, and appellant's assignments attacking said findings are accordingly overruled. Clark v. Stubbs, Tex. Civ.App., 131 S.W.2d 663; McBeth v. Streib, Tex.Civ.App., 96 S.W.2d 992; Hill v. Mays, Tex.Civ.App., 278 S.W. 919; McCharen v. Mead, Tex.Civ.App., 275 S.W. 117.

■ Appellant further challenges the legality of the votes of Petra Baldomar and Lucia G. Pena, asserting that such votes were illegal under the provisions of Articles 2956 and 3010, Vernon's Ann.Texas Civil

Statutes. The statement of facts discloses that these two women voted absentee in the primary election. They came to the office of the County Clerk together, and one witness testified that he observed them while they were voting and they were discussing their ballots together and each giving aid and assistance to the other in casting the vote. This testimony was flatly contradicted by the two women, who, in substance, testified that they had entered the clerk's office together, but that when the ballots were delivered to them, the County Clerk seated one of them at one end of the table and the other at the other end, that neither assisted the other or knew how the other voted. The trial court found as a fact that, both had paid poll taxes; that they did not show each other their ballots, and neither of them received from the other any assistance in marking or casting her ballot.

This testimony raises questions of fact purely within the province of the trial court to decide. It was his conclusion that no illegal assistance was given in connection with these votes and that finding is binding here.

■ Article 2956 relates to absentee voting and provides that absentee ballots shall be voted in "the office of said clerk of said county, and in the presence of said clerk and of no other person." Appellant asserts that these votes were invalid as both voters were seated at the same table in each other's presence, even though they did not assist each other in voting.

In the case of Stratton v. Hall, supra, the El Paso Court of Civil Appeals said:

"Clifford Ramsey, Mrs. B. Ramsey, and Mrs. E. L. Stratton, Sr., all voted absentee ballots, and appellant contends that their ballots should be disregarded because they failed to comply with the provisions of article 2956, as amended by chapter 300 of the Acts of the 44th Legislature (Vernon's Ann.Civ.St. art. 2956).

"The contention of appellant is that the provisions of such article are merely directory and that a failure to comply with them should not be used to disfranchise voters. With such contention we agree. It appears to be well settled that in the ab-

sence of a statute prohibiting the counting of ballots because of irregularities either in preparing or casting, and in the absence of fraud or of a showing that the returns were changed or tampered with, ballots cast by qualified voters should be counted. Hooker et al. v. Foster et al. (Tex.Civ. App.) 19 S.W.2d 911; Ramsay v. Wilhelm (Tex.Civ.App.) 52 S.W.2d 757 (writ refused)."

As pointed out in the Stratton case, Article 2956 does not provide that a ballot voted in the presence of some other person than the County Clerk shall be void.

■ Article 3010 entitled "Aid to voter" contains provisions for election booths and prescribes how legal assistance in voting may be rendered to the illiterate, aged and infirm. It further expressly provides that "where any assistance is rendered in preparing a ballot other than as herein allowed, the ballot shall not be counted, but shall be void for all purposes." It has, however, been held that the failure to observe the provisions of article 3010, which do not relate to assisting the voter in preparing the ballot, do not invalidate the vote. In Altgelt v. Callaghan, Tex.Civ. App., 144 S.W. 1166, 1171, Justice Fly said: "The provision of the law [now Article 3010] in regard to voting booths is for the purpose of obtaining secrecy of ballot and is peculiarly for the benefit of the voter, and, while the law in regard to voters preparing their ballots in the booths should be enforced, the failure to do so would not invalidate the votes of those not using the booths."

Appellant's challenges to the votes of Petra Baldomar and Lucia G. Pena are overruled.

What has been said makes it unnecessary for us to consider appellee's cross-assignments of error relating to the three votes cast for Cantu, which the trial court held to be illegal, and we therefore express no opinion with reference thereto.

The judgment of the trial court is affirmed.

SMITH, C. J., did not participate in the decision of this case.