Oscar M. CAVALLIN, Appellant,

v.

Rex IVEY, Jr., Appellee.

No. 5602.

Court of Civil Appeals of Texas.

El Paso.

Aug. 28, 1962.

Brown Bailey, Midland, for appellant.

Bruce Sutton, Alpine, Johnson & Dionne, Fort Stockton, for appellee.

LANGDON, Chief Justice.

This is an appeal from a judgment of the District Court of Brewster County in an election contest. Contestant, Rex Ivey, Jr., contested the results of the official canvass of the votes cast in the Democratic Primary election of May 5, 1962, for the office of County Commissioner of Precinct No. 4 of Brewster County, wherein contestee, Oscar M. Cavallin, received 32 votes and contestant, Rex Ivey, Jr., received 26 votes for such office.

Contestant Ivey contested the validity of sixteen votes cast for Cavallin and contestee Cavallin contested the validity of nine votes cast for Ivey.

Trial was to the court without the intervention of a jury. In its judgment the court found two votes cast for contestant to be illegal, and eleven votes cast for contestee to be illegal. Judgment was entered decreeing contestant, Rex Ivey, Jr., elected as the nominee of the Democratic party for the office of Commissioner of Precinct 4, by a vote of 24 for Ivey to 21 for Cavallin. From such judgment appellant, Oscar M. Cavallin, has perfected this appeal.

Appellant has conceded that the trial court did not err in holding that the votes cast for appellant by Fred Guliher and wife, Anita Guliher, were illegal votes.

By his points of error appellant charges that the court erred in holding that the votes cast for him by nine other individuals were illegal, and in holding to be legal four votes that were cast for appellee, Rex Ivey, Jr. By cross-assignments appellee Ivey has attacked the ruling of the court on two votes.

We will first consider appellant's points by which it is charged that the trial court erred in holding as illegal, and in deducting, nine votes from the total votes cast for appellant. (Points Nos. 1, 2, 4 and 6).

The trial court found that the votes cast by Domingo Gonzales and Herminio Gonzales were cast for contestee; that such votes were illegal votes "because such voters were not entitled to vote in said election in said Voting Precinct No. 4."

Domingo and Herminio Gonzales are brothers. Both are citizens of the United States. Both are married. Domingo was born at Terlingua, Texas and is married to a United States citizen. Herminio's wife, however, is a citizen of the Republic of Mexico. The wives of the two men each live in the town of Santa Helena in the Republic of Mexico, and for many years both men have "visited" their respective wives only on Sundays once every seven to fifteen days. Domingo has been married for twenty years, and Herminio for twelve years. They have seven and six children, respectively. Both men own dwellings located in the Republic of Mexico in which their wives and children reside, but neither owns any real property in the United States. There is no indication that either man has ever worked anywhere but in the United States. For the past two or three years, while working in the vicinity of Terlingua, in Brewster County, they have occupied a house owned by a cousin, Chico Ramirez. Part of the time they have occupied quarters furnished them by their employer, a contractor in Big Bend National Park. Both men had valid poll tax receipts, and there is no question but that the place in which they lived, slept and prepared their own food for at least six days out of every week was in the precinct in which they sought to vote.

This is an unusual fact situation, and we have been unable to find any Texas cases precisely in point. Unquestionably, had they been single, both men would be entitled to have their votes counted in the election in which they cast their ballots. The question presented here is whether they (being otherwise qualified electors) forfeited their right to vote, not only in the precinct in which they lived, but anywhere in the State of Texas, by virtue of the fact that both men were married to women who lived and resided outside of the boundaries of the United States.

Article 6, Section 1 of the Texas Constitution, Vernon's Ann.St. designates the classes of persons who shall not be allowed to vote in this state, to-wit: Persons under twenty-one years of age; idiots and lunatics; all paupers supported by any county; and all persons convicted of any felony, subject to such exceptions as the Legislature may make.

Section 2 of Article 6 provides in part as follows:

"Every person subject to none of the foregoing disqualifications who shall have attained the age of twenty-one (21) years and who shall be a citizen of the United States and who shall have resided in this State one (1) year next preceding an election and the last six (6) months within the district or county in which such person offers to vote, shall be deemed a qualified elector; and provided further, that any voter who is subject to pay a poll tax under the laws of the State of Texas shall have paid said tax before offering to vote * * *."

There is no evidence that either of the Gonzales brothers ever lived anywhere other than in Texas, except for weekly or semi-monthly overnight trips into the

Republic of Mexico to visit their wives and children.

■ While the residence of a married man is ordinarily determined by where his wife resides (Article 5.08, Election Code, V.A.T.S.), such rule is not without exception. Farrell v. Jordan, Tex.Civ.App., 338 S.W.2d 269, 275; Stratton v. Hall, Tex. Civ.App., 90 S.W.2d 865; McBride v. Cantu, Tex.Civ.App., 143 S.W.2d 126.

In Farrell v. Jordan, supra, appellant asserted that the trial court erred in not deducting the vote of Fred Fields from the votes cast for appellee, because Fields was not a legal resident of Brazoria County (where he voted) on the ground that his wife resided in Bay City, Matagorda County, and that his residence was where his wife resides, if they are not permanently separated.

Fields testified that he had a business in Rosharon, Brazoria County, and that he considered it his permanent residence, but that his wife did not live there because "she doesn't like things at Rosharon." Fields owns the home occupied by his wife in Bay City and claims a homestead exemption on it. He and his wife have been married for 49 years, and he goes to see (visits) her nearly every week-end and stays in the home, except during harvest season. He eats and sleeps ninety per cent of the time in Rosharon, but if he were to sell out in Rosharon he would go back to Bay City.

The trial court held Fields to be a qualified voter at Rosharon, in Brazoria County, where he voted, and the Houston Court of Civil Appeals affirmed such holding, saying:

"We think when the legislature used the term 'residence' of the wife, it meant the legal residence of the wife and not merely where she might physically reside."

In a 1936 opinion by this court in the case of Stratton v. Hall, supra, we held that the question of residence of a married person for voting purposes under Article 2958 (Article 5.08, Texas Election Code, V.A. T.S.) is one which must be determined by reference to the actual facts and circumstances, one of which will be his intention. Such holding was expressly approved and adopted by the San Antonio Court of Civil Appeals in a 1940 opinion by Justice Norvell. (McBride v. Cantu, supra.)

On direct examination by counsel for contestant-appellee, the witness Domingo Gonzales testified as follows:

"Q But your real home is where you live there with your wife in Mexico?

"A That is where she lives.

"Q Don't you live with your wife?

"A Just Sundays when I go.

"Q How old is your youngest baby?

"A Four years.

"Q All right. Do you work all the time in the Park, year 'round or do you just work there sometimes?

"A When there is work and sometimes when they ask me to work.

"Q I see, but there isn't work all the time?

"A No, sir.

"Q And when you are not working where do you stay?

"A At Chico Ramirez', Campo Nueva.

"Q Except on Sundays, when you go stay with your wife?

"A Sometimes I go look for work and don't go.

"Q How much of the year do you work? Half, or more?

"A All the year I have been working at the U–2 * * *

"Q Do you do any work in Mexico?

"A No, sir, I don't work there at all."

We believe that in a case such as this, Article 5.08 has no application, and that a married man's legal residence is not affected by the fact that his wife resides outside the United States where it is conclusively shown, as we believe it is here, that the husband physically resides in the United States and only visits his wife on Sundays. We do not believe the Legislature intended the courts to apply the rule of the statute except in cases where a husband and wife, not permanently separated, are shown to reside in different places *within the United States*. A contrary holding, assuming the one offering to vote is otherwise qualified, would, in our opinion, operate not only to disfranchise a citizen of his right to vote, but might conceivably place in jeopardy other rights and privileges normally enjoyed by resident citizens of the United States, but not available to those who reside abroad or who may be deemed to have become residents of a foreign country. In addition, we are of the opinion that any other construction would be an unauthorized enlargement of the classes of persons prohibited from voting under the Constitution of Texas, Article 6, Section 1, supra, and would be in violation of Section 2 of the same Article.

There is a presumption in favor of the validity of the vote cast. Contestant-appellee challenged the votes cast by Domingo and Herminio Gonzales only upon the grounds that they did not live in County Commissioner's Precinct No. 4 of Brewster County, Texas on May 5, 1962, when they voted. Aside from the fact that the wives of each of the two voters physically resided in the Republic of Mexico, the only other evidence was to the effect that both voters did reside in the Commissioner's precinct in which they voted. We hold, therefore, that the two votes cast by Domingo and Herminio Gonzales are valid and legal votes; that such voters "resided" in the precinct; and that the trial court erred, as a matter of law, by declaring such votes illegal and in deducting them from the

total votes cast for appellant, Oscar M. Cavallin.

All of appellant's remaining points are based upon the assertion that the trial court erred in deducting certain votes from the total votes cast for appellant and in not deducting certain votes from the total votes cast for appellee. The basis of each assertion is that the legal residence of certain voters whose votes were held to be illegal was in Commissioner's Precinct No. 4 of Brewster County, and in the case of certain other voters whose votes were determined by the trial court to be legal, that the legal residence of such voters was not in Commissioner's Precinct No. 4. In each instance the trial court, in determining whether a particular vote should or should not be deducted, necessarily found the residence of the challenged voter was in Commissioner's Precinct No. 4, or that it was not in such precinct. If there is evidence to sustain such findings, we may not disturb them.

We have carefully reviewed the evidence upon which the trial court was required to make a decision with respect to the validity or invalidity of the votes cast for appellant by Bob Turner and wife Lola Turner; Arturo White and wife, Carolina White; F. C. Fulcher and wife, Evelyn Fulcher; and Frank Duncan, which the court held to be illegal votes; and in holding that the votes cast for appellee by Buell DeMumbrun and wife, Mrs. Buell DeMumbrun, and Rex Ivey, Jr. and wife, Mrs. Rex Ivey, Jr., were legal votes. Each of the court's decisions rested solely upon questions of fact to be determined by the trial court as the trier of facts in the absence of a jury. While it is true that reasonable minds might differ as to the conclusions reached by the trial court, we are of the opinion that there is evidence to sustain the findings required to support the judgment of the trial court with respect to the votes cast by each of the above-named persons; and in such case we are bound by the trial court's findings. No useful purpose would be served in outlining the evidence upon

which the trial court based its various decisions, in view of our holding that such evidence was sufficient. Appellant's Points 2, 3, 4, 5 and 6 are accordingly overruled.

Appellant's Point 1 presented a question of law and was sustained by us. Our decision has the effect of adding two votes to the total vote cast for appellant Oscar M. Cavallin, but does not change the result of the election as found by the trial court. Appellant's total vote is raised from 21 to 23 votes, against appellee's total of 24 votes, leaving appellee with a majority of one vote.

Our opinion renders it unnecessary for us to consider appellee's cross-assignments of error relating to two votes cast for appellant which the trial court held to be legal, and we therefore express no opinion with reference thereto.

The judgment of the trial court is affirmed.

FRASER, J., not sitting.