Virgilio H. GUERRA et al., Appellants,

v.

Amando PENA et al., Appellees.

No. 14545.

Court of Civil Appeals of Texas.

San Antonio.

Sept. 23, 1966.

Rehearing Denied Oct. 3, 1966.

Hill, King & McKeithan, Mission, Arnulfo Guerra, Roma, for appellants.

Luther E. Jones, Jr., Corpus Christi, Frank R. Nye, Jr., Emilio F. Gutierrez, Glenn H. Ramey, Rio Grande City, for appellees.

PER CURIAM.

This is an election contest filed by appellants, Virgilio H. Guerra and Horacio Vela, contesting the results of the 1966 Starr County Democratic Primary for nomination to the officers of County Commissioner, Precinct 2, and Justice of the Peace, Precinct 2, respectively. Appellees, Amando Pena and Mrs. Minerva R. Pena, were certified to be the successful nomi-

nees for these respective offices by the Starr County Democratic Executive Committee.

The two contests were apparently brought and tried as one suit because both contestants are members of the "Old Party" whereas contestees are members of the "New Party" in Starr County, and since the boundaries of the two offices are similar most of the challenged votes affect both candidates of each "party" in similar fashion. A substantial number of ballots, most of which were voted absentee, were challenged in the trial court by contestants and contestees. After a lengthy hearing, the trial court made findings relative to 158 ballots, resulting in the following final recount, and judgment was entered declaring that both contestees were duly nominated:

| | Returns Per Election Officials | Election Officials' Miscounts corrected by Trial Court | Votes Counted by Election Officials but declared illegal by Trial Court | Votes rejected by Election Officials but declared valid by Trial Court | Result in Trial Court |
|---|---|---|---|---|---|
| **County Commissioner** | | | | | |
| Contestant Guerra | 760 | + 12 | − 7 | + 18 | 783 |
| Contestee A. Pena | 821 | − 22 | − 5 | + 23 | 817 |
| **Justice of the Peace** | | | | | |
| Contestant Vela | 749 | + 14 | − 7 | + 18 | 774 |
| Contestee M. Pena | 808 | − 8 | − 5 | + 22 | 817 |

It is seen that to prevail on this appeal it is necessary that contestant Guerra change the findings of the trial court to a net of 35 votes, whereas contestant Vela must change the findings to a net of 44 votes. Contestants' appeal relates to a total of approximately 125 ballots, although several are challenged for more than one reason. By counter-points, contestees complain of the trial court's findings as to 13 ballots.

Contestants urge that the trial court erred in not voiding 69 absentee ballots which were allegedly secured by applications based upon medical certificate signed by Dr. Rene A. Solis, although none of such certificates had been requested by the voter or by any one at his direction. There is no contention that any of the persons were not actually disabled, and the uncontradicted evidence shows that a medical examination was made by Dr. Solis before he signed each certificate. Contestants assert, however, that there is no evidence, or insufficient, evidence of a request for a certificate in the manner required by law.[1]

1. Subd. 2, Art. 5.05 of the Election Code, V.A.T.S. sets forth the provisions for making application for an absentee ballot. This section requires the application to be

The only testimony on this point came from Dr. Solis, who has been Starr County Sheriff for 18 years and, although obviously a leader in the "New Party," was called by contestants as a witness. Dr. Solis testified that he signed medical certificates for "many absentee voters" between April 19 and May 2, 1966. Although Dr. Solis had a notebook which contained, in chronological order, the names and summary of each person examined, the notebook was not offered in evidence and only three persons were identified as having been examined by Dr. Solis. Contestants urge that the identity of the other 66 voters may be ascertained by an examination of the applications contained in the absentee ballot boxes.

■ The trial court refused to make this examination and it is our opinion that an abuse of discretion is not shown by this refusal, in that contestants did not make out a prima facie case of illegality as to these voters to justify the trial court's examination of these ballots. Art. 13.30, Election Code, Vernon's Ann.Civ.St.; McIver v. Starkey, Tex.Civ.App., 271 S.W. 2d 314, no writ; De La Garza v. Salinas, Tex.Civ.App., 255 S.W.2d 396, no writ; Markowsky v. Newman, Tex.Civ.App., 138 S.W.2d 896, wr. dism. The voting lists show that an absentee vote was cast by a person of a name identical to each of the challenged voters. However, contestants failed to show that these challenged voters secured their ballots by medical certificates furnished by Dr. Solis.

A more difficult question is presented as to the ballots of Ascencio Canales, Nicholas Escobar and Blasa R. Salinas, in that the testimony of Dr. Solis shows that he issued a medical certificate for each. Dr. Solis testified that "the certificates" and therefore presumably "these" certificates were signed at the place of examination, which was usually at the voter's home, and that the request for the examination was made by a "party" representative who accompanied him when the examinations were made. There was no evidence from any of the voters, or the "party representative" as to whether the voter directed the representative to arrange for the examination.

■ The contestants had the burden of introducing evidence that these voters did not direct the "party representative" to request Dr. Solis to make the examinations. This Court has repeatedly held that in an election contest, the contestant has the heavy burden of overcoming the presumption that the election officials discharged their duty properly in receiving or rejecting a ballot. Guerra v. Ramirez, Tex.Civ.App., 364 S.W.2d 720, wr. dism.; Guerra v. Ramirez, Tex.Civ.App., 351 S.W. 2d 272; Solis v. Martinez, Tex.Civ.App., 264 S.W.2d 956, wr. dism.

Contestants urge that they discharged their burden under the holding in McGee v. Grissom, Tex.Civ.App., 360 S.W.2d 893, no wr. hist. The question of who has the burden of going forward with the evidence is not considered in this opinion. The appellate court there upheld the trial court's ruling in voiding 21 absentee ballots which were obtained, completed and delivered fraudulently. The evidence showed that the applications with blank medical certificates attached were delivered by the contestant and his wife to an elderly retired physician who was not the family physician of any of the voters and further did not have personal knowledge of the physical condition of any of said voters.

accompanied by a medical certificate where sickness or physical disability is given as the reason for the application.

This section also provides substantially that any person who requests a physician to execute a certificate for another person without having been directed to do so, or any physician who knowingly executes a certificate except upon request of voter or someone at voter's direction shall be guilty of a misdemeanor.

The facts which supported the finding in the *McGee* case that the medical certificate was obtained fraudulently are distinguishable from the uncontradicted evidence in this case, in that Dr. Solis examined each of the voters before signing the medical certificate and each was in fact entitled to vote absentee for this reason. Further, there was evidence that Dr. Solis had examined these persons for the purpose of their securing medical certificates at many prior elections. In our opinion, the trial court did not abuse its discretion in refusing to examine the certificates and ballots of these voters.

Contestants urge that four voters, including the three identified as having been given a medical certificate by Dr. Solis, were continuously unconscious or insane and therefore their ballots should be voided. Two of the four had died before the trial. The evidence was sharply conflicting as to the mental and physical disabilities of these four voters. They were found qualified by the election officials and there is sufficient evidence to support the trial court's finding that none were shown to have been mentally disqualified from voting.

Contestants urge that two procedural errors affected the case as a whole by denying them due process, and specifically affected a number of voters who cast ballots for contestants which were rejected by the election officials. Shortly after contestees filed their answer in this cause, contestants served contestees with a request for admissions in accordance with Rule 169, Texas Rules of Civil Procedure, and with notice of intention of taking the deposition by written interrogatories of 32 witnesses whose ballots had been rejected. Prior to the expiration of the time for reply to these requests and for issuance of the commissions, contestees filed motions with the trial court seeking to be excused from answering a number of the requests for admissions and also seeking to enjoin the issuance of the commission for the depositions, unless a "time and place" for the taking of such depositions were stated. Both of these motions were substantially granted.

The request for admissions contained 23 requests with several containing many subsections. The first twelve requests relate to formal or jurisdictional requirements of this suit; i. e., precinct boundaries, the certified election results, and identity of the parties. All but two of these requests were admitted by contestees. The remaining eleven relate to the specific grounds for challenging the action of the election officials; i. e., questions were asked relative to each of the persons listed in the various exhibits attached to contestants' petition and contestees were asked to admit that they were non-residents or residents, according to how the result would affect contestants, the specific grounds for rejection by the election officials of numerous ballots and similar matters which went to the merits of the lawsuit. The trial court found that the information requested was subject to proof by neutral witnesses and the information was not known to contestees. It accordingly excused contestees from replying to these requests.

Contestants urge that contestees could have answered most of the requests by making a reasonable inquiry and therefore the requests should be taken as admitted. Here, however, the trial court excused contestees from replying. This action, even if erroneous, relieved contestees of the necessity of timely responding to these requests. It is further our opinion that the trial court did not abuse its discretion in entering this order. We do not believe that Rule 169, supra, should be used so as to cast upon respondent the burden and expense of proving the movant's lawsuit. Rather, the purpose of this rule is to simplify the trial by eliminating matters that really are not in controversy. Stayton, 20 T.L.R. 19; Sanders v. Harder, 148 Tex. 593, 227 S.W.2d 206; Masten v. Masten, Tex.Civ.App., 165 S.W.2d 225, wr. ref.

■■ Reversible error is not shown by contestants' complaint of the action of the court in enjoining issuance of commissions to take written depositions. Although this action was done just prior to the date set for hearing of the contest, the trial court offered to keep the case open until contestants had the opportunity to take the written deposition of any witness they desired. Contestants made no effort to do so, nor have they shown by bill of exceptions the testimony of any of such witnesses. Therefore reversible error is not shown. Guerra v. Ramirez, Tex.Civ.App., 364 S.W.2d 720. Furthermore, we do not believe the trial court abused its discretion in requiring contestants to set these depositions for a specific time and place. Rule 186b, T.R. C.P.

Contestants urge that 21 ballots which were cast for contestees should be declared void because of the improper campaign activity of a Starr County employee. Saul F. Hinojosa, who was a member of the "New Party," was in California for sixteen or seventeen days in April, 1966, campaigning on behalf of the "New Party" candidates. In this connection he visited a number of migrant worker camps where workers from Starr County usually were found. He took absentee application forms with him and these 21 voters were among some seventy to seventy-five persons that he contacted and encouraged to vote absentee. There is a strong indication from the physical evidence that a substantial portion of many of the application forms were filled out at one time, and therefore outside the presence of most of the voters, in that the information was written on the same typewriter.

■ We have not found any provision in the Election Code to prohibit campaigning outside the State or the encouragement of an eligible voter to cast an absentee vote. The absentee voting papers of each voter are in regular form, including a statutory affidavit on the carrier envelope executed by each voter before one of several no-taries public in California. There was also testimony identifying each of these voters, together with his signature. The trial court did not err in refusing to reject these ballots because of the political activity of Hinojosa.

■ Sixteen of these ballots were rejected by the election officials and contestants urge that the trial court erred in reinstating them, in that contestees did not discharge their burden of showing by clear and satisfactory proof that such voters were legally qualified in every respect. See Guerra v. Ramirez, Tex.Civ.App., 351 S.W. 2d 272. Specifically, it is asserted that there is no proof that any of said voters "marked his ballot before a notary public or other person authorized to administer oaths" as required by law. Election Code, Art. 5.05, Subd. 4. The affidavit on the carrier envelope is prima facie evidence that this requirement was met, and in the absence of any evidence to the contrary, the trial court properly counted these ballots.

Contestants urge that the trial court erroneously counted ballots of 47 voters who were non-residents of the two precincts in question. The boundaries of both contested offices lie within voting Precincts 6 and 7. These 47 voters must be divided into two categories because the burden of proof differs as to each category. Twenty-three of these ballots were rejected by the election officials, but were reinstated by the trial court. The remaining twenty-four were counted by the election officials as well as by the trial court.

■ The law presumes that the rejected ballots were cast by an illegal voter and the burden of proof was upon contestees in the trial court to show by clear and satisfactory proof that each of such voters was a legally qualified voter in every respect. On the other hand, the burden of proof was upon contestants to demonstrate to the trial court by clear and satisfactory proof that the twenty-four ballots cast by the other challenged voters were illegal.

Guerra v. Ramirez, Tex.Civ.App., 351 S.W. 2d 272.

A substantial part of the lengthy statement of facts relates to the question of residence of over 100 voters challenged in the trial court. These voters fall into two basic categories: 1. Migrant workers, who although born and reared in Starr County, spend several months each year working in different parts of the United States; 2. voters who, although American citizens, live in Mexico, primarily because of marriage to a Mexican citizen. Most of the challenged voters cast absentee ballots and very few were present at the time of the trial. Testimony relative to their residence or non-residence was from relatives and acquaintances of the voters in most instances. This evidence, which was from party officials and persons vitally interested in the election, is sharply conflicting. We must presume on this appeal that the conflicts as to these 47 voters were resolved by the trial court as the trier of the facts in a manner favorable to contestees.

The voting residence of a person as defined in Art. 5.08 of the Election Code[2] has recently been considered by the Supreme Court in Mills v. Bartlett, Tex., 377 S.W.2d 636 (1964) and by this Court in Del Rio Ind. School Dist. v. Aldrete, Tex.Civ.App., 398 S.W.2d 597, writ dismissed. In *Mills*, it was said: "The term 'residence' is an elastic one and is extremely difficult to define. The meaning that must be given to it depends upon the circumstances surrounding the person involved and largely depends upon the present intention of the individual. Volition, intention and action are all elements to be considered in determining where a person resides and such elements are equally pertinent in denoting the permanent residence or domicile." In *Aldrete,* we said: "Other cases have emphasized the rule that the question of residence for voting purposes is one which must be determined by reference to the actual facts and circumstances; one of which will be the intention."

In McBride v. Cantu, Tex.Civ. App., 143 S.W.2d 126, no history, this Court adopted the following rule from Reid v. King, Tex.Civ.App., 227 S.W. 960: "A removal to divest one of his right to vote must be accompanied by an intent to make a new domicile and quit the old. Mere removal, coupled with an intent to retain the original domicile and return to it, will not constitute a change." See also Jordan v. Overstreet, Tex.Civ.App., 352 S.W.2d 296; Spraggins v. Smith, Tex.Civ.App., 214 S.W.2d 815.

We have examined the record relative to the residence of these 47 voters in the light of these legal principles. Insofar as the 24 ballots counted by the election officials and the trial court are concerned, contestants wholly failed to introduce clear and satisfactory proof that the following migrant workers were not residents of either of these voting precincts: Leonel R. Lozano, Narcisso Salinas, Macario Sandoval, Gilberto G. Sandoval, Aracelia G. Sandoval and Lorenzo Gomez. There was evidence that each maintained a permanent residence in one of these precincts and was gone a part of each year because of his work. Contestants did not meet their burden of proof as to voters Margarito Rosa and wife, Apolonia M. Rosa, or Donato Gonzalez.

A number of other voters in this category were shown to be working in other counties, i. e., Mrs. Oscar Canales teaches school in Hidalgo County; Mora Dolores Guerra teaches school in Jim Wells County; Luisa Naranjo teaches school in Hidalgo County; Hector H. Hinojosa, accompanied by his wife, Rosabel G. de Hinojosa, is working in a Galveston shipyard while waiting for a

2. This article provides in part as follows: "The 'residence' of a single man is where he usually sleeps at night; that of a married man is where his wife resides, or if he be permanently separated from his wife, his residence is where he sleeps at night; * * *."

job in Starr County with the Texas Liquor Control Board; Manuel Santiago Guerra is working in Austin pending sufficient funds to return to the University of Texas; the husband of Velma H. Ramos works four or five months each year in California on construction jobs; and Oscar Canales works for a pipe line company which is now working in Hidalgo County. Rafula H. Gonzalez is temporarily out of the county nursing her sick husband. There is evidence that each of these voters has at all times maintained his or her voting residence in Starr County. Several maintain homes in Starr County, while others have rented rooms. All keep some of their furniture or clothes in their Starr County residences. Contestants failed to show that these voters were not residents.

In Cavallin v. Ivey, Tex.Civ.App., 359 S.W.2d 910, no history, the Court recognized the problem of determining residence where an American citizen marries a Mexican citizen living in a nearby Mexican city. Under the holding in that case the husband's legal residence in the United States is not affected by the fact that his wife resides outside the United States, where it is shown that the husband physically resides in the United States and only visits his wife periodically. Voters Marshall Littleton, Amando Garcia, and Cresencio Talamante, were shown to be in a similar domestic situation and the court did not err in overruling the challenge as to their ballots.

Contestants showed by clear and satisfactory proof that three of the 24 voters in this category were not legal residents of Precinct 6 or 7. Alma Yolanda Canales is a single girl, twenty-seven years of age, and under the undisputed evidence she has worked over a year at a factory in Houston; Reymundo Feugero is divorced and has worked full time for a radio shop in Evanston, Illinois, for the last one and one-half years. The fact that these two single people return on holidays to visit their parents in Starr County would not qualify them as residents.

The parties stipulated that voter C. J. Duggan lived in Precinct 6 until he moved to Precinct 7 in August 1965, and on election day, instead of voting in Precinct 7, he went back and voted in Prec. 6. This stipulation was sufficient to show that he voted in the wrong precinct. Therefore, his ballot is void. Harrison v. Jay, 271 S.W.2d 388 (Tex. 1954); Boroughs v. Williamson, Tex.Civ.App., 312 S.W.2d 717, writ dism.

More difficult questions are presented as to the 23 voters whose ballots were rejected by the election officials but reinstated by the trial court. Thirteen of these voters were shown to be migrant farm workers with a permanent residence in Precinct 6 or 7. This evidence supports the trial court's finding that they were qualified voters.

Contestants assert that six members of the Munoz family (father, his two sons and their wives) live in Seagoville in Kaufman County, Texas. None of them testified at the trial. However, a relative testified that they live in Precinct 6, and identified the signatures of each on a stub. He testified that each has always claimed Precinct 6 as his residence. Since their work in Seagoville is only seasonal, they spend about half of each year at a house in Precinct 6, and still have furniture and clothes in this house. In rebuttal to this evidence, a friend of the Munoz family testified that he had visited in their homes at Seagoville, just a few days before the trial, and that all three families lived in houses on a ranch in Kaufman County where they had worked for several years. The trial court apparently believed the testimony of the relative rather than that of the friend, although the relative was then under two indictments for burglary. This testimony establishes their residence in Starr County.

Contestants urge that the evidence was not clear and satisfactory that the four Ramos voters (two brothers, Cleofas and Jose, their cousin's husband, Raul Barrera,

and his sister, Ofilia B. Ramos) were residents. The burden was upon contestees to show this in the trial court, by clear and satisfactory proof, since the election officials rejected their votes. Only Cleofas testified at the trial. He testified that he and his wife rented a house in Precinct 6, and, although he went to California as a migrant farm worker, his wife and children remained in Roma. He testified his brother Jose and family resided in this house with him. He further testified that Ofilia B. Ramos and Raul Barrera live in Precinct 6 with her two daughters and their husbands, although this address was not identified. He admitted Jose, Ofilia and Raul are married to Mexican citizens who live in Mier, Mexico. The only address on the poll tax receipts for these three voters is a post office box in Roma, Starr County. A witness called by contestants testified that all had homes in Mier, Mexico. In our opinion the evidence is not clear and satisfactory that Jose, Ofilia or Raul were residents of Precinct 6.

Contestants complain of six ballots favorable to them which were marked "challenged" by the election officials prior to being deposited in the ballot box. Although placed in the ballot box, they were subsequently removed by the officials and rejected. This procedure was highly improper. Marking the voter's ballot so that it could later be identified destroyed the secrecy of the ballot. Art. 8.09, Election Code, provides the proper procedure to be followed by the election officials where a prospective voter is challenged. In our opinion these votes should therefore be presumed legal. In McCrary on Elections, § 279, the applicable rule is set forth: "The inspectors of an election having received the vote of a person, and deposited the same in the box, can not afterward enter into any inquiry as to the right of such person to vote."

Contestants assert challenges as to nine additional ballots. Inasmuch as these points, even if sustained, would not change the result in either contest, we do not deem it necessary to discuss these points or contestees' counter-points.

The judgment of the trial court is affirmed. Any motion for rehearing must be filed within five days from this date.