# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-14-00461-CR
_____

## ROBERTA MARGARET COOK, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 359th District Court**
**Montgomery County, Texas**
**Trial Cause No. 12-03-02585 CR**

## MEMORANDUM OPINION

A jury convicted Roberta Margaret Cook of illegal voting and the trial court sentenced Cook to three years in prison, but suspended imposition of sentence and placed Cook on community supervision for five years. Cook presents five appellate issues challenging her conviction. We affirm the trial court's judgment.

Background

James Stilwell, an attorney, testified that The Woodlands Road Utility District ("the RUD") directors hired him to contest a May 2010 election. According to

Stilwell, the two voters who resided inside the RUD voted early. On election day, however, ten more voters cast ballots, including Cook. Stilwell testified that Cook's voter registration, dated approximately one month before the election, identified The Woodlands Marriott Residence Inn (the "Inn") as her residence and a location in Conroe, Texas, as her mailing address. Stilwell testified that Cook is not taxed by the RUD, does not reside within RUD, applied for a homestead exemption on her Conroe property in 2006, never spent the night at the Inn during 2010, and listed her Conroe address on her driver's license. Stilwell testified that he visited Cook's Conroe home shortly after the election, and the home contained everything he expected for a home in which someone actively lived.

Phil Grant, the first assistant for the Montgomery County District Attorney's Office, testified that he drafted a letter in which he cautioned registered voters against illegal voting. He explained that his office received a complaint alleging fraudulent voter registration, which caused concern that the newly registered voters intended to vote in the election when they did not actually reside in the RUD. The letter was sent to every registered voter in the RUD and was intended to "encourage them to review the relevant statutes . . . on voter registration and where you could vote and encourage them to vote appropriately." He testified that it would be "problematic" if Cook voted but had never stayed at the Inn.

Adrian Heath testified that he received Grant's letter, but did not interpret the letter as an instruction to refrain from voting in the election. He testified that the letter referenced opinions from the Texas Secretary of State and the Texas Attorney General, which Heath provided to other voters at a meeting. Heath testified that when he changed his voter registration, he had never stayed at the Inn, his home is located outside the RUD, and he is not taxed by the RUD. On the night before the election, Heath stayed at the Inn. He recalled seeing Cook at the Inn that night and at the election the next morning.

Richard McDuffee testified that he participated in a scheme to vote in the election. McDuffee explained that the "idea was to get ten or more to change their voting registration to inside of the district to vote in the upcoming election." He knew that the Inn was not his residence both when he changed his voter registration and when he voted. McDuffee was also a candidate in the election, and he testified that he was told to get elected and shut down the RUD. He testified that no one planned to move into the Inn and no one left their homes to move into the Inn. McDuffee acknowledged receiving Grant's letter before the election, which he perceived as a warning against voting in the election. McDuffee testified that when he voted, he was apprehensive and unclear on the legality of the vote, but he believed the possibility of being prosecuted was low.

3

Peter Goeddertz, who also voted in the election, testified that the voters believed they were acting legally when they applied for new voter registration cards. He testified that he was unaware that he voted illegally. Goeddertz reviewed opinions from the Texas Attorney General and the Texas Secretary of State regarding residency and felt that he met the qualifications for voting. Goeddertz stayed at the Inn on the night of the election. He recalled seeing Cook on the day of the election. After the election, he returned to his home in Magnolia, Texas, with no intention of returning to the Inn.

James Doyle, Cook's father, testified that he attended a meeting at which Heath did most of the presenting, and he received copies of the two agency opinions, which he reviewed and discussed with Cook. He testified that Cook never attended the meetings with other group members. Doyle testified that he resides in Conroe and although he did not change his address, he encouraged Cook to change her voter registration, and he went with Cook to the Inn on the night before the election. Doyle testified that he and Cook did not spend the night. He testified that Cook went to the Inn on election day, but returned to her home in Conroe after voting. According to Doyle, Cook never spent the night at the Inn before the election. He testified that he would not have encouraged Cook to vote if he knew it was illegal.

Sybil Doyle, Cook's mother, testified that she lives in Conroe but changed her voter registration to the Inn. She testified that she went to the Inn the night before the election but did not spend the night, and she returned with Cook on election day. She never returned to the Inn after voting. She has since voted based on her address in Conroe. Sybil testified that she had reviewed the Texas Secretary of State and Texas Attorney General opinions and believed she voted legally.

Cook testified that she knew she was not eligible to vote in the election based on her Conroe residence. When she changed her voter registration, she had never been to the Inn and she had no intention of leaving her home in Conroe. She testified that she lived at the Conroe residence when she signed her voter registration application and when she voted. She went to the Inn on the night before the election and stayed for about an hour. She returned to the Inn on election day. After voting, she had no intention of returning to the Inn. She testified that the sole purpose of changing her voter registration was to vote in the election, not to live at the Inn. Cook did not recall receiving Grant's letter. She reviewed the Texas Attorney General and Texas Secretary of State opinions on the night before the election. She also discussed her questions regarding the residency issues with Doyle. Cook testified that she believed she voted legally.

According to Goeddertz and McDuffee, when the election became contested, they returned to the Inn to take photographs with other voters and have mail forwarded to the Inn. Once the election contest ended, they returned to their residences outside the RUD. James Doyle testified that he also went to the Inn a few times after the election but Cook did not.

## Motion to Quash Indictment

In issue one, Cook challenges the denial of her motion to quash because, according to Cook, the Texas Election Code's definition of "residence" is indefinite and circular.[1] The indictment alleged that Cook voted in an election in which she

---

[1]Cook asks us to take judicial notice of (1) numerous voting records that she contends show voters who do not vote where they live; (2) a letter from the Montgomery County Elections Administrator; and (3) records from prior trials involving the other voters who participated in the RUD election. An appellate court may, within its discretion, take judicial notice of adjudicative and legislative facts on appeal. *Emerson v. State*, 880 S.W.2d 759, 765 (Tex. Crim. App. 1994); *see* Tex. R. Evid. 201(d). However, the record does not indicate that any of these documents are part of the appellate record or that the trial court had the opportunity to consider them; thus, we decline to take judicial notice of documents outside the appellate record. *See Davis v. State*, 227 S.W.3d 733, 737 (Tex. Crim. App. 2007) (The court of appeals properly declined to take judicial notice of exhibits that were not considered by the trial court and were not part of the appellate record.); *see also Jack v. State*, 149 S.W.3d 119, 121 n.1 (Tex. Crim. App. 2004) (Appellate courts cannot consider factual assertions outside the appellate record; documents outside the record do not "concern[] events or actions in the trial court and [] cannot be considered for the truth of the matters asserted."); *Gaston v. State*, 63 S.W.3d 893, 900 (Tex. App.—Dallas 2001, no pet.) (Generally, "appellate courts take judicial notice of facts outside the record only to determine jurisdiction over an appeal or to

knew she was not eligible to vote, "to-wit: the May 8, 2010 Woodlands Road Utility District Board of Directors election, when she knew she did not reside in the precinct in which she voted[.]" In her motion to quash, Cook argued that section 1.015 of Texas Election Code provided an unconstitutionally vague definition of "residence" and that "[i]t would be impossible for the State to prove the allegations beyond a reasonable doubt or for the Defendant to defend against such a vague definition." The trial court denied the motion.

We review the denial of a motion to quash under a *de novo* standard. *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007). We "construe a statute according to its plain language, unless the language is ambiguous or the interpretation would lead to absurd results that the legislature could not have intended." *Williams v. State*, 253 S.W.3d 673, 677 (Tex. Crim. App. 2008). A statute is unconstitutionally vague when a person of "'common intelligence must necessarily guess at its meaning and differ as to its application[.]'" *Baker v. State*, 478 S.W.2d 445, 449 (Tex. Crim. App. 1972) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). When the statute is unambiguous, we assume the Legislature meant what it has expressed, and we do not add or subtract from the statute. *Tapps v. State*, 294 S.W.3d 175, 177 (Tex. Crim. App. 2009).

resolve matters ancillary to decisions that are mandated by law . . ." and "are reluctant to take judicial notice of facts that go to the merits of the dispute.").

To be an eligible voter, a person must "be a resident of the territory covered by the election for the office or measure on which the person desires to vote[.]" Tex. Elec. Code Ann. § 11.001(a)(2) (West 2010). The term "residence" means "domicile," *i.e.*, a person's home and fixed place of habitation to which he intends to return. *Id*. § 1.015(a). The person does not lose his residence by leaving his home to go to another place for temporary purposes only. *Id*. § 1.015(c). Nor does the person "acquire a residence in a place to which the person has come for temporary purposes only and without the intention of making that place the person's home." *Id*. § 1.015(d).

We conclude that the statute's plain language would enable a person of common intelligence to understand the following: (1) to become a legally registered voter, he must both maintain a domicile in the territory in which he seeks to vote and intend to return to that domicile after any temporary absence; and (2) when seeking to establish a residence, it is insufficient to go to a place within the territory for a temporary purpose and without any intent of making that place his home. *Id*. § 1.015(a), (d). The statute is neither ambiguous nor subject to absurd results. *See Tapps*, 294 S.W.3d at 177; *see also Williams*, 253 S.W.3d at 677. We overrule issue one.

## Sufficiency of the Evidence

In issues two through four, Cook challenges the denial of her motion for directed verdict, the legal sufficiency of the evidence, and the jury's rejection of her mistake of law defense. She contends that the State failed to prove that she knew she was not eligible to vote. We address these three issues collectively.

"We treat a point of error complaining about a trial court's failure to grant a motion for directed verdict as a challenge to the legal sufficiency of the evidence." *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). Under a legal sufficiency standard, we assess all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We give deference to the jury's responsibility to fairly resolve conflicting testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13.

A person votes illegally by voting or attempting to vote in an election in which he knows he is not eligible to vote. Tex. Elec. Code Ann. § 64.012(a)(1) (West Supp. 2014). "It is no defense to prosecution that the actor was ignorant of the provisions of any law after the law has taken effect." Tex. Penal Code Ann. §

9

8.03(a) (West 2011). A person alleging a mistake of law must show that he reasonably believed the charged conduct did not constitute a crime and that he acted in reasonable reliance upon the following:

> (1) an official statement of the law contained in a written order or grant of permission by an administrative agency charged by law with responsibility for interpreting the law in question; or

> (2) a written interpretation of the law contained in an opinion of a court of record or made by a public official charged by law with responsibility for interpreting the law in question.

*Id*. § 8.03(b).

A party's knowledge is a fact question for the jury and may be proven through circumstantial evidence. *See Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984). The jury may "use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence." *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). It is not required that "every fact and circumstance 'point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances.'" *Id*. (quoting *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)).

The jury heard evidence that Cook's voter registration application contained the following statement: "I understand that giving false information to procure a

voter registration is perjury, and a crime under state and federal law." According to Cook's own testimony, Cook considered her Conroe home as her residence both when she signed her voter registration application and when she cast her vote. The jury also heard evidence that Cook is not taxed by the RUD, her Conroe home appears lived-in, she applied for a homestead exemption on her Conroe home, and she had never actually stayed at the Inn in 2010. At no time did Cook have any intent to leave her home in Conroe and reside at the Inn. The jury could reasonably conclude that Cook did not come to the Inn with the intent of making the Inn her fixed place of habitation, but instead came to the Inn for temporary purposes only with the intent that her Conroe home remain her domicile. *See* Tex. Elec. Code Ann. § 1.015(a), (d).

Moreover, the jury was entitled to reject Cook's contention that she believed she voted legally. *See Hooper*, 214 S.W.3d at 13. Cook testified that she relied on her father's representations regarding the residency requirement and that she did not review opinions from the Texas Secretary of State and the Texas Attorney General until the night before the election. Additionally, both opinions alerted the reader to the Election Code's prohibition against acquiring "a residence in a place to which the person has come for temporary purposes only and without the intention of making that place the person's home." Tex. Elec. Code Ann. § 1.015(d); *see* Tex.

11

Sec'y State Op. No. GSC-1 (2004); *see also* Tex. Att'y Gen. Op. No. GA-0141 (2004). In doing so, the Texas Secretary of State opinion cited to the following:

> A removal to divest one of his right to vote must be accompanied by an intent to make a new domicile and quit the old. *Mere removal, coupled with an intent to retain the original domicile and return to it, will not constitute a change*.

Tex. Sec'y State Op. No. GSC-1 (emphasis added) (quoting *Guerra v. Pena*, 406 S.W.2d 769, 776 (Tex. Civ. App.—San Antonio 1966, no writ)). The Texas Attorney General opinion clearly explained that "[b]oth bodily presence and current intention on the part of the applicant or voter are necessary to establish residence." Tex. Att'y Gen. Op. No. GA-0141. According to the Texas Attorney General, the State may investigate and prosecute when credible evidence is brought to its attention or a complaint is filed alleging Election Code violations. *Id.*

As previously discussed, Cook had no intention of leaving her original domicile in Conroe, but intended to return to it. The jury could reasonably conclude that reading these opinions before the election alerted Cook to the fact that, absent both her bodily presence at the Inn and her current intention to leave her Conroe residence and not return to it, she would be casting an illegal vote and could be subject to prosecution. *See id.*; *see also* Tex. Sec'y State Op. No. GSC-1. Thus, the jury was entitled to reject Cook's mistake of law defense on grounds that she could

12

not have reasonably believed that the charged offense was not a crime. *See Acosta*, 429 S.W.3d at 625; *see also* Tex. Penal Code Ann. §8.03(b).

Viewing the evidence in the light most favorable to the verdict, the jury could find, beyond a reasonable doubt, that Cook voted illegally by voting in an election in which she knew she was not eligible to vote. *See Jackson*, 443 U.S. at 318-19; *see also* Tex. Elec. Code Ann. § 64.012(a)(1); *Hooper*, 214 S.W.3d at 13. We overrule issues two, three, and four.

Ineffective Assistance

In issue five, Cook contends that trial counsel rendered ineffective assistance by failing to present certain evidence and file a post-trial motion. To establish ineffective assistance, Cook must satisfy the following test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010). Allegations of ineffectiveness "must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

13

"Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). "Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional." *Id.*

The record does not indicate that Cook's motion for new trial alleged ineffective assistance. The record is silent as to trial counsel's tactical and strategic decision making. *See Estrada v. State*, 313 S.W.3d 274, 311 (Tex. Crim. App. 2010). Nor is trial counsel's ineffectiveness apparent from the record. *See Freeman v. State*, 125 S.W.3d 505, 506-07 (Tex. Crim. App. 2003). Because Cook cannot defeat the strong presumption that counsel's decisions during trial fell within the wide range of reasonable professional assistance, we overrule issue five. *See Thompson*, 9 S.W.3d at 814. We affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

14

Submitted on October 28, 2015
Opinion Delivered November 18, 2015
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.